In the Matter of the Claim of FANNIE TUSHINSKY, Appellant, against NATIONAL BROADCASTING Co., et al., Respondents. STATE INDUSTRIAL BOARD, Respondent.

Third Department, December 29, 1942.

*Charles S. Phillips* for claimant-appellant.

*Charles P. Barre* for employer and carrier, respondents.

*John J. Bennett, Jr., Attorney-General,* for State Industrial Board, respondent.

BLISS, J. Jacques Tushinsky was a musician in the National Broadcasting Co. Orchestra traveling in South America on a good-will tour under the charge of H. Leopold Spitalny and the direction of the distinguished maestro Arturo Toscanini. On July 10, 1940, the orchestra arrived in Rio de Janeiro by train and stopped at the Plaza Hotel. The theatre was directly across the street from the hotel. At four o'clock in the afternoon the musicians, including Tushinsky, reported at the theatre for rehearsal. They were then instructed to take their baggage when the rehearsal was over and be at the boat at six-thirty o'clock for dinner. After dinner they were to be taken by bus from the boat to the theatre for the concert and immediately after the concert back to the boat and were to sail at midnight. The boat docked near the foot of the same avenue on which the hotel and theatre were located, although it was necessary to make turns into different streets to reach there from the theatre. At about five-fifteen P. M. the musicians, including Tushinsky, left the theatre. When it came time for the evening concert he was missing. He was killed at about six-twenty P. M. while attempting to board a bus going in the direction of the boat. As he attempted to catch this bus he was struck and killed by another bus going in the same direction. The place of the accident was approximately a mile and a half from the dock and in another direction. Mr. Spitalny testified that the musicians worked any five hours within a ten-hour period and that if called at four o'clock then they were under his jurisdiction until the concert was over.

There is no explanation in the record as to what mission took the decedent to the point where he met his death. When last seen by any one who knew him he was at the theatre and left with the other musicians. It was surmised that he may have been purchasing gifts to bring back with him to the United States or that he was on some other personal mission, but the record is lacking in evidence from which such mission may be

reasonably inferred. It was argued by appellant that it was just as possible for him to have lost his way while journeying from the hotel to the boat. The Industrial Board held that he was not in the course of his employment because it did not find evidence in the record to indicate that the decedent was engaged in anything other than a personal pursuit and denied an award.

We can only guess as to what caused the decedent to deviate from the direct route between the hotel and the boat. It may have been some personal pursuit or he may have lost his way. It is not uncommon for a traveler to become lost in a strange city or confused by unfamiliar language, street signs and traffic. It was shown in this case that traffic conditions were unusually dangerous in Rio. The one conclusion is as likely as the other. But when last seen by those who knew him, he was in the course of his employment and the burden of showing a deviation from the employment is thus cast upon those who assert it. "There is a well-recognized common-law rule that a relationship, such as that of principal and agent, once shown to have existed, may be inferred or presumed to have continued until its non-existence has been established." (*Matter of Norris* v. *N. Y. C. R. R. Co.*, 246 N. Y. 307.) The common-law presumption of continuance must prevail unless there is substantial evidence to the contrary.

The risk was special. The public at large and average employees in New York employments are not ordinarily subject to such risks as resulted in Tushinsky's death. His was not the usual journey of a travelling man. It was a good-will tour on which all expenses were paid by the employer and during which he was subject to call at all times. The itinerary was arranged by the employer. Visits to foreign countries were included. Dangers attendant upon strange customs, people and languages were incidents of the journey. The risks of travel become the risks of the employment when the latter has sent the traveller forth upon the journey and brought exposure to its perils. (*Matter of Marks* v. *Gray*, 251 N. Y. 90; *Matter of Lepow* v. *Lepow Knitting Mills*, 288 N. Y. 377.) Voyagers ever have attended to minor details of a more or less personal nature although the journey has remained the major objective. Some slight deviation such as the purchase of gifts is to be expected. The privilege of doing so is an incentive and one of the inducements. But they did not alter the general course of the journey. One on a good-will tour must watch his conduct at all times, for some misstep can result in harm, just as much when off duty as on. Where, as here, the deviation if one there was, was to be expected and constituted no departure from the general object

of the tour, it does not result in a complete severance of the relationship of master and servant.

The one is still subject to the control of the other and the furtherance of the employer's interests is still the constant aim of the employee. In the absence of substantial proof of complete freedom of action the employee should not be deprived of one of the important benefits of the relationship such as Workmen's Compensation Insurance.

The claimant is also entitled to the presumption of section 21 of the Workmen's Compensation Law (Cons. Laws, ch. 67). This presumption, coupled with the unrebutted common-law presumption of the continuance of the employment, is sufficient to sustain the award. The finding that the injuries did not arise out of and in the course of the employment is unsustained.

It was not necessary that claimant show that decedent was engaged in anything other than a personal pursuit. There is no proof that his mission was personal.

The decision should be reversed and the matter remitted to the State Industrial Board.

HILL, P. J., CRAPSER and FOSTER, JJ., concur; SCHENCK, J., dissents and votes to affirm the decision of the State Industrial Board.

Decision reversed, with costs against the State Industrial Board, and matter remitted to the State Industrial Board.