In the Matter of the Claim of Gertrude Davis, Respondent, against Newsweek Magazine et al., Appellants. Workmen's Compensation Board, Respondent.

Argued October 16, 1952; decided January 15, 1953.

*Ralph S. Stowell* and *Joseph D. Edwards* for appellants. The death of Davis did not result from an accident which arose out of and in the course of his employment. (*Matter of Heitz* v. *Ruppert,* 218 N. Y. 148; *Matter of Scholtzhauer* v. *C. & L. Lunch Co.,* 233 N. Y. 12; *Isabelle* v. *Bode & Co.,* 215 App. Div. 184; *Matter of Katz* v. *Kadans & Co.,* 232 N. Y. 420; *Matter of Marks* v. *Gray,* 251 N. Y. 90; *Matter of Lief* v. *Walzer & Son,* 248 App. Div. 651, 272 N. Y. 542; *Matter of Lepow* v. *Lepow Knitting Mills,* 263 App. Div. 211, 288 N. Y. 377; *Matter of Baron* v. *Norton & Co.,* 264 App. Div. 802; *Matter of Lowe* v. *Wright & Co.,* 245 App. Div. 875; *Matter of Lyons* v. *U. S. O. Camp Shows,* 274 App. Div. 861; *Matter of Scott* v. *U. S. O. Camp Shows,* 274 App. Div. 862; *Matter of Younger* v. *Motor Cab Transp. Co.,* 260 N. Y. 396.)

*Nathaniel L. Goldstein, Attorney-General* (*Daniel Polansky, Wendell P. Brown* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent. Ample evidence supports the finding that the employee's death arose out of and in the course of his employment. (*Matter of Tushinsky* v. *National Broadcasting Co.,* 265 App. Div. 301, 292 N. Y. 595; *Matter of Lyons* v. *U. S. O. Camp Shows,* 298 N. Y. 897; *Matter of Scott* v. *U. S. O. Camp Shows,* 298 N. Y. 896; *Matter of Block* v. *Camp Shows,* 272 App. Div. 980; *Matter of De Santis* v. *U. S. O. Camp Shows,* 275 App. Div. 880; *Matter of Windishar* v. *Warmack,* 271 App. Div. 855; *Matter of Fuller* v. *Title Guar. & Trust Co.,* 223 App. Div. 173; *Matter of Wickham* v. *Glenside Woolen Mills,* 252 N. Y. 11; *Matter of Bollard* v. *Engel,* 254 App. Div. 162, 278 N. Y. 463; *Matter of Younger* v. *Motor Cab Transp. Co.,* 260 N. Y. 396.)

FROESSEL, J. Claimant is the widow of one Harry Davis, hereinafter called decedent. They were married on October 2, 1948, and had no children. On May 16, 1949, decedent, while at a vacation resort in Biloxi, Mississippi, came to his death as

the result of diving in shallow water from the end of a long pier. His claimant widow was awarded compensation below. She remarried on December 31, 1949.

The sole issue presented by this appeal is whether or not the accidental death arose out of and in the course of his employment. Decedent was science editor of *Newsweek*, with offices in New York City. Besides working at his desk, he would visit places of scientific interest and attend meetings, preparatory to writing articles for his employer, which he sometimes did at home. His employment called for thirty-five hours of work per week.

In the spring of 1949, he and claimant contemplated a vacation trip west — they "had never been around the United States" — during which he planned as part of their vacation to visit places of scientific interest throughout the country by automobile. He then proposed to his employer that his allotted vacation of four weeks be extended in order that he might visit additional scientific developments as background material for use in his work. He was granted an additional four weeks, and thus the entire eight weeks were combined as a vacation and business trip to the west coast. In addition to paying his salary, his employer agreed to pay the nominal amount of $200 toward the expenses of the trip. It was contemplated that decedent might send in articles for publication during the course of the trip, although apparently not required to do so. A tentative itinerary was left with the employer so that decedent might be contacted for either personal or business reasons should occasion arise.

In the course of their trip, claimant and decedent visited the atomic energy project at Oak Ridge, Tennessee, after which they started on their way to San Antonio, Texas, to visit the Southern Research Institute. On the second day of that journey, they stopped at Biloxi, Mississippi, a "gulf port vacation spot", not scheduled on his itinerary and for which they had no reservations. No scientific investigation had been planned there or elsewhere in that State. Upon arriving at the hotel, decedent, being hot and tired, prepared to take a swim. Instead of entering the water from the beach, he chose to engage in a hazardous act — to dive from a pier in unfamiliar water, as aforesaid — as a result of which he suffered injuries from which he died.

The Appellate Division, in sustaining the board's determination that decedent was in the regular course of his employment when he was drowned, and that the accidental injuries and death arose out of and in course of his employment, stated that said employment, or a phase of it, was that of a tourist, which exposed him to the risks incident to that status, and that his attempt to get relief from his fatigue following a long journey in hot weather might be regarded as a reasonable act in the course of his employment, since, had it been successful, it would have been of some benefit to his employer, in that decedent might more promptly have sent a better article.

We find ourselves unable to concur in that reasoning. To be compensable, an injury must arise out of the employment as well as in the course thereof (*Matter of Wilson* v. *General Motors Corp.*, 298 N. Y. 468, 472; *Matter of Clark* v. *Voorhees*, 231 N. Y. 14, 17). Since decedent was traveling between places of scientific interest when he was killed, it may in a broad sense be said to have been in the course of his employment. His travels, however, though finally twofold in purpose, were predominantly in furtherance of the personally motivated vacation trip, except for which he would not have gone (*Matter of Marks* v. *Gray*, 251 N. Y. 90). His status as a tourist was personal and unrelated to his employment, for he was a science editor, not a travel writer; risks peculiar to tourist activity could not fairly be said to arise out of his employment. Upon the facts here shown, only risks arising out of his inspections of scientific sites and travel thereto could possibly give rise to compensable injuries.

Neither was the death compensable simply because the employer might derive some incidental benefit from decedent's attempt to refresh himself in this manner. A slight and momentary deviation from the work routine for an accustomed and accepted purpose (*Matter of Montgomery* v. *Bartholomay Milk Co.*, 260 N. Y. 664; *Matter of McLellan* v. *International Paper Co.*, 269 App. Div. 800, motion for leave to appeal dismissed 294 N. Y. 967) must be distinguished from purely personal activity, however much such activity may incidentally benefit the employer (*Matter of Marks* v. *Gray, supra; Matter of Chetney* v. *Manning Co.*, 273 N. Y. 82; *Tallon* v. *Interborough R. T. Co.*, 232 N. Y. 410; *Matter of Kowalek* v. *New York Cons. R. R. Co.*, 229 N. Y.

489; 1 Larson's Workmen's Compensation Law [1952], § 15). If the factory worker who is injured on his way to work may not be compensated therefor, how could we justify the award herein on the tenuous basis that decedent's swim may have been of "some benefit" to his employer in enabling him to write a better article? If that is to be deemed a sufficient nexus between the employment and the injury, then one may say that in the ordinary effort of living a man continually makes himself ready for his employer's service and thus should be compensated for whatever injury befalls him.

The risks inherent in travel may, of course, arise out of the employment where such travel is a necessary incident thereof (*Matter of Landrum* v. *Congress Motor Corp.*, 301 N. Y. 544; *Matter of Kleid* v. *Carr Bros.*, 300 N. Y. 270; *Matter of Lief* v. *Walzer & Son*, 272 N. Y. 542; *Matter of Theyken* v. *Diplomat Products*, 268 N. Y. 658; *Matter of Crowell* v. *American Fruit Growers*, 253 N. Y. 543; *Matter of Gibbs* v. *Macy & Co.*, 242 N. Y. 551; *Matter of Harby* v. *Marwell Bros.*, 235 N. Y. 504; *Matter of Katz* v. *Kadans & Co.*, 232 N. Y. 420). Moreover, when the travel is essentially part of the employment, the risk remains an incident thereof even though the employee may have turned his steps toward a place of refreshment, for the employment continues until the necessary travel is concluded (*Matter of Laubeck* v. *Toc's Products Co.*, 286 N. Y. 577). When such travel is performed in foreign lands, where strange customs or abnormal conditions prevail, the risk involved in traveling from a place of reasonable personal diversion to the appointed place for service may also come within the coverage afforded by the employer's compensation insurance (*Matter of Scott* v. *U. S. O. Camp Shows*, 298 N. Y. 896; *Matter of Lyons* v. *U. S. O. Camp Shows*, 298 N. Y. 897; *Matter of Tushinsky* v. *National Broadcasting Co.*, 265 App. Div. 301, appeal dismissed 292 N. Y. 595).

Such coverage has also been considered to include risks arising out of the inherent nature of the place to which the employment takes the employee, without regard to the particular circumstances in which the injury occurred. Thus awards have been upheld where the employee was bitten by a disease-bearing insect indigenous to a tropical country (*Matter of Lepow* v. *Lepow*

*Knitting Mills,* 288 N. Y. 377), or has been struck by a bullet fired during a skirmish in a country at war (*Matter of Lewis* v. *Knappen Tippetts Abbett Eng. Co.,* 304 N. Y. 461). Similarly, one whose employment takes him to a hotel may recover compensation for injuries sustained in a conflagration (*Matter of Blake* v. *Grand Union Co.,* 277 App. Div. 914, motion for leave to appeal denied 301 N. Y. 813; *Matter of Commissioner of Taxation & Finance [Buck]* v. *Katherine Gibbs School,* 277 App. Div. 126, motion for leave to appeal denied 301 N. Y. 813), or one required to reside in certain premises may recover for injuries resulting from fire or other condition rendering the premises inherently dangerous (*Matter of Finnegan* v. *Biehn,* 276 N. Y. 50; *Matter of Giliotti* v. *Hoffman Catering Co.,* 246 N. Y. 279; *Matter of Underhill* v. *Keener,* 258 N. Y. 543). So where one whose work necessarily takes him outdoors in all kinds of weather is exposed to the risk of lightning (*Matter of Many* v. *Bradford,* 266 N. Y. 558) or heat prostration (*Matter of Hughes* v. *St. Patrick's Cathedral,* 245 N. Y. 201). It is also true that recreational or other normally personal activity may sometimes become so intimately related to the employment as to create risks incidental thereto (*Matter of Dodge* v. *Wm. J. Keller, Inc.,* 304 N. Y. 792; *Matter of Brown* v. *United Services for Air,* 298 N. Y. 901; *Matter of Bollard* v. *Engel,* 278 N. Y. 463).

These authorities must be read, however, in the light of the basic principle that there can be no compensation for injuries arising out of purely personal activities not directly related to the employment. In other words, each case depends upon its facts (*Matter of Masse* v. *Robinson Co.,* 301 N. Y. 34, 37). As already noted, the risk of travel may be compensable even though it is travel to a place of rest or refreshment, so long as travel is part of the work routine. But an accident happening at such place, resulting solely from the personal pursuits therein undertaken, is not compensable (*Matter of Goldman* v. *John Hancock Mut. Life Ins. Co.,* 276 N. Y. 582; *Matter of Johnson* v. *Smith,* 263 N. Y. 10; *Matter of Davidson* v. *Pansy Waist Co.,* 240 N. Y. 584). Neither is an injury resulting from recreational activity compensable, where such activity is carried on on the employee's own time and off the employer's premises, though

the employer has sanctioned and given financial assistance to such activity (*Matter of Wilson* v. *General Motors Corp., supra*).

We think it is quite clear that decedent, in engaging in the hazardous act of diving off the pier in strange waters for a swim, was indulging in a personal recreational activity in nowise related to his employment, except as all such activity, in refreshing mind and body, better fits the individual for his daily labors. His death was not "work-connected", it did not occur in such a way as to bring it within any of the categories above mentioned, in which awards have been allowed; it did not, therefore, arise " out of and in the course of the employment " and is not compensable.

There is one other group of cases in which compensation was allowed of which note may be taken, not because they are apposite but because they may appear to be so upon a cursory reading. Some of these appear to pertain to travel or street risks, others to recreational activity during travel (*Matter of Crippen* v. *Press Co.*, 254 N. Y. 535 [employer furnished hotel room during a strike and instructed claimant to stay in vicinity — assaulted, presumably by striker]; *Matter of Madura* v. *City of New York*, 238 N. Y. 214 [claimant ordered to wait under tree during storm — struck by lightning]; *Matter of Motto* v. *Cosmopolitan Tourist Co.*, 278 App. Div. 597, motion for leave to appeal denied 302 N. Y. 950 [bus driver's duties required that he wait for fishing party — injured on boat while following custom of going out with fishing party]; *Matter of De Santis* v. *U. S. O. Camp Shows*, 275 App. Div. 880, motion for leave to appeal denied 299 N. Y. 798 [musician required to wait in San Francisco until called to ship for embarkation — struck by automobile while crossing street]; *Matter of Block* v. *Camp Shows*, 272 App. Div. 980, motion for leave to appeal denied 297 N. Y. 1032 [theatrical manager required to wait in Monroe, Louisiana, for transportation back to air base — injured in fall down steps while going into barbershop for haircut]; *Matter of Gabunas* v. *Pan American Airways*, 279 App. Div. 697 [air line stewardess required to wait in Lisbon during enforced layover of assigned aircraft — injured while cycling]). Careful examination of these cases reveals that there is one operative factor common to all. In each and every instance the employee had been directed, *as*

*part of his duties,* to remain in a *particular* place or locality until directed otherwise or for a specified length of time. In those circumstances, the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his employment. In the *De Santis* and *Gabunas* cases (*supra*), the area in which the employee was required to wait embraced a city, but it was so delineated by the employer, and consequently those cases do not in any way represent an extension of or departure from the rule. The operative factor present in those cases is not present in the case at bar.

For the reasons above set forth, the order of the Appellate Division should be reversed, and the award of the Workmen's Compensation Board annulled, with costs in this court and in the Appellate Division, and the claim dismissed.

CONWAY, J. (dissenting). We feel constrained to state our views which seem to us to follow and to be in accord with those expressed in *Matter of Lewis* v. *Knappen Tippetts Abbett Eng. Co.* (304 N. Y. 461), decided two sessions back. We are the more inclined to do this since if there is to be a distinction between employee journeys made solely for work and those combining vacation and work, that should be called to the attention of employees for their protection and to the Legislature as well.

The Workmen's Compensation Board has made findings of fact which have been affirmed by the Appellate Division of the Supreme Court (3d Dept.). We may not make new findings or add findings of our own. The board expressly found that while the decedent was engaged in the regular course of his employment and while working for his employer he arrived at Biloxi, Mississippi, and was drowned while swimming; that his death was the result of an accident which arose out of and in the course of his employment while "on a combined vacation and business trip to the West Coast". Those findings of the Workmen's Compensation Board are conclusive upon us unless we can say as a matter of law that they are unsupported by evidence (see Workmen's Compensation Law, § 23; *Matter of Daus* v. *Gunderman & Sons,* 283 N. Y. 459). Thus, to set aside the award

and dismiss the claim we must say, as a matter of law, that no reasonable man on the present record could draw an inference that the stop at Biloxi had anything to do with the business end of the combined business and vacation trip. It seems to us that it is impossible to say that for several reasons. It is a matter of common knowledge among professional men that when one goes out of town on a matter of his professional calling, there is almost no appreciable period of time when his mind is not concerned with the matter in hand. So it is even though the trip be called a combined vacation and business trip. The man is never completely and entirely on either one to the exclusion of the other. Even though on a business trip a man may have his best ideas: as he retires, as he shaves in the morning, as he listens to music, as he considers the progress of the work or a phrase to be used or a meeting to be arranged.

There is indeed nothing factually which may be added to the findings of the board as restated with more detail in the majority opinion of the Appellate Division. If we were to stress or point up any of the facts it would be by way of restating in a conclusory manner that the decedent was a writer and science editor for a nationally known magazine, *Newsweek*. Decedent had a good background for his work since he had an engineering degree from Cornell University and had had a year in Harvard University in journalism on a fellowship. He had written two books one entitled "Energy Unlimited" and another for the U. S. Signal Corps while serving in the army. He had also written articles for *Scientific American*. In the spring, when he was about to arrange for his vacation, he decided to speak to his superiors at *Newsweek* and ask them to extend the four-week vacation to which he was entitled "and make it a real science hop eventually" by going to "the science hot spots so-to-speak and get to see people he was writing about or was planning to write about, see the apparatus he was writing about and see the laboratories ". He planned to explain to his superiors the necessity of this " as far as being a good science editor now and in the future ". This he did by talking with his immediate superior. He later outlined the plan in an interoffice communication under date of April 15th to his immediate superior which was subsequently approved by *News-*

*week.* The memorandum was received in evidence as an exhibit without objection and will be referred to presently. An agreement was also reached between deceased and *Newsweek* by which decedent was to receive his salary for the eight weeks he was to be gone at the customary rate of $150 a week as well as $200 for expenses, making a total of $1,400. That was what the board referred to in its second finding of facts as " a combined vacation and business trip", and to which the Appellate Division referred when it said that "decedent's employee status was so inextricably entwined with his tour as to sustain the board's finding that his employment included his transient stopover at Biloxi on his route to San Antonio." (279 App. Div. 502, 504.) Indeed it seems to us that it could not have been found otherwise. The itinerary was to cover, in time, eight weeks from May 7th to July 4th. Feature stories for the following weeks were to be provided by wire or mail to the medical editor who was to handle decedent's department in his absence. The inter-office memorandum exhibit read: " Mrs. Clark, as usual, is prepared to handle the department during my absence, except that during three of the weeks I propose to send in feature stories from places I visit which will provide the bulk of the department. Because of out-of-town assignments she has scheduled, material for the following weeks would be most convenient to her, and I can provide it by wire or mail:

(1) week of May 23
(from Oak Ridge or San Antonio, Tex.)

(2) week of June 6
(from New Mexico or California)

(3) week of June 13
(from California) ".

The deceased came to his death on May 16th, six days after he had left New York and after he had spent several days at Oak Ridge, Tennessee, where he had inspected the atomic energy project and was traveling on a line between Oak Ridge and San Antonio, Texas, with his feature story due in seven days, part of which he had planned to write on the night of the day he died. As to that the decedent's widow testified: "Well, Monday we had to drive so that we could get somewhere where we could

put up and we always preferred to drive during daytime in the light so we drove and we were tired, we planned to drive and did drive until we were tired which was I think three or four in the afternoon when we hit the first gulf port which was Biloxi. Q. And did he have any plans for doing any writing on that day? A. Yes, he was going to write up the Russell story for one thing because he talked about that in the car. Q. He had his notes all prepared for that, is that correct? A. Yes.''

We think it clear that had the decedent met his death in an automobile accident while driving from Oak Ridge on his way to San Antonio at Biloxi (which is between Oak Ridge and San Antonio) no one would claim that the accident was not compensable. Here, the decedent and his wife arrived at the first gulf city hot and exhausted in the late afternoon and, since they avoided travel after dark, they decided to stop at Biloxi. The decedent decided to go into the water on the beach apparently adjacent to the hotel. Since his wife was pregnant and did not wish to go into the water he sent her onto the beach while he was changing into a bathing suit. She went down directly and he came down in fifteen minutes as they did not unpack. The water was shallow. The decedent went all the way out on the pier, '' it was like three city blocks,'' and made a head-first dive into the water. He did not come up and before help could be obtained he was gone. Since, as his wife testified, the decedent ''planned to write the Russell story that evening'' and to make some notes on the Oak Ridge visit, we consider that the Workmen's Compensation Board was correct in finding that the accident arose out of and in the regular course of his employment. We are of the opinion that under the evidence here, if it could be considered that there was a deviation by decedent from his duties of an active nature, there was no such deviation or departure from the general performance of the duties of his mission as to result in a severance of his employee status at the time of the accident. (See *Matter of Block* v. *Camp Shows,* 272 App. Div. 980, motion for leave to appeal denied 297 N. Y. 1032; *Matter of Tushinsky* v. *National Broadcasting Co.,* 265 App. Div. 301, appeal dismissed 292 N. Y. 595).

The scientific points of interest in the itinerary included the following:

"1. Oak Ridge, Tenn.: atomic research
2. Norris Tenn.: TVA research
3. Gorgas, Ala.: experiment in underground coal gasification
4. San Antonio, Tex.: Southern Research Institute
5. Meteor Crater, Ariz.: new diggings by University of New Mexico
6. Imperial Valley, Calif.: All-America canal and reclamation
7. Palomar Mountain: the 200 inch telescope
8. Pasadena, Calif.: California Institute of Technology
9. Los Angeles: University of Southern California: Bing Crosby's institute of inventions; UCLA
10. San Francisco: University of California (biggest cyclotron, etc.)
11. Palo Alto: Stanford Research Institute
12. Muroc Dry Lake: Supersonic flight testing
13. Denver: University of Denver, Mt. Evans cosmic ray station
14. Los Alamos: Atomic research and possibly a look at uranium mining operations in Colorado ".

We have set forth and quoted the scientific points of interest and the weeks when the feature stories were to be provided as outlined in the interoffice memorandum exhibit to indicate the extent of the work to be done by decedent on the trip. In the same interoffice memorandum the trip was denominated a vacation and business trip. The Workmen's Compensation Board in its findings referred to it as "a combined vacation and business trip ". If we were permitted to make findings, which of course we are not, we would say that this was predominantly a business trip by a man who was endeavoring to advance himself in his business organization and who was willing to toss in most of his annual vacation for 1949. Many years ago when the Legislature and the Workmen's Compensation Board were not as liberal in viewing compensation claims as they are today, we laid down in a local case, involving a trip to a village, a common-sense rule which has often been cited since by us in upholding awards,

although not in denying them. The test in brief is this: "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own (*Clawson* v. *Pierce-Arrow Co.,* 231 N. Y. 273). If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk." In that case a plumber's helper who was about to visit a nearby village was asked by his employer, who had learned of the proposed journey, to do a trifling job there. While en route he was injured in an automobile wreck and died. We properly held that the accident "did not arise out of and in the course of the employment". (*Matter of Marks* v. *Gray*, 251 N. Y. 90, 93-94, CARDOZO, Ch. J.) The man on the street would have decided that case in the same way and we have recently said in *Matter of Masse* v. *Robinson Co.* (301 N. Y. 34, 37, LOUGHRAN, Ch. J.): " Whether a particular event was an industrial accident is to be determined, not by any legal definition, but by the common-sense viewpoint of the average man." So here, it seems to us, that the decedent being on his way from one project to another in two separate cities, and there being no requirement that he make the long trip between those two cities without stopping for rest during the night, that stopping at Biloxi with the intention of writing part of his feature article due in New York City within a week and taking a dip in the water to relieve his tiredness and exhaustion so that he might prepare his article, with death accidentally resulting therefrom, was an industrial accident within " the common-sense viewpoint of the average man." There can be no question in view of our decision in *Matter of Lewis* v. *Knappen Tippetts Abbett Eng. Co.* (304 N. Y. 461, *supra*) that if decedent had been sent by his employer to follow the itinerary as laid out and if it were no part of a combination vacation and work trip, that his death would be compensable. That would be because he would have an employee's status during all of his trip and could do the things which a person might reasonably be expected to do while living as he ordinarily lived and exercising the care of a reasonable man. When a man is sent on a long trip, whether

here or abroad, among people with whom he is not accustomed to live, where he will work intermittently, it is not to be anticipated that when he has concluded his work on one of such occasions and the next conference or activity on his part is not to take place for twenty-four or forty-eight hours, that he will immediately repair to his room and remain there until the next period of activity. He may properly go sightseeing (*Matter of Lewis* v. *Knappen Tippetts Abbett Eng. Co., supra*); he may go to a barbershop (*Matter of Block, supra*); he may get a breath of fresh air or a smoke (*Matter of Montgomery* v. *Bartholomay Milk Co.,* 260 N. Y. 664; *Matter of McLellan* v. *International Paper Co.,* 269 App. Div. 800, motion for leave to appeal dismissed 294 N. Y. 967); he may go cycling (*Matter of Gabunas* v. *Pan American Airways,* 279 App. Div. 697), without ceasing to be covered by workmen's compensation. That is because he has an employee status during such conduct. It cannot be that because an employee wishes to make himself more valuable to his corporation and at the same time see a portion of the country and scientific projects therein which he has never seen before (merely another way of saying, in this instance, to make himself more valuable to his employer) he loses that which he would have had if he had waited for the employer to pay the entire cost and thus in some mysterious way loses his status as employee whenever he stops working on one piece of business only to regain it days later when he becomes engaged in another piece of business. An employee's status cannot be such a shifting and shuttling relationship. If the court was right in its decision of the *Lewis* case, then, it seems to us, the principles there enunciated apply here.

It seems to us, too, that we must now squarely face a new type of employee situation which has arisen in a world which has materially changed and has contracted transportation-wise, and thus geographically, in the last fifteen or twenty years. Before that, workmen's compensation cases, similar in some aspects to the present one, arose locally, like the trip of the plumber's helper to a neighboring village. The rules we made, except for more liberality on the part of the Legislature, the Workmen's Compensation Board and the courts, may still be said to be

properly applicable and just. We first began to perceive a difference between those cases and cases involving employees sent to foreign lands or to distant cities on their way to foreign lands by their employers. First there was the case of *Matter of Lepow* v. *Lepow Knitting Mills* (288 N. Y. 377), in which the employer sent a salesman to South Africa to promote its business interests. While in Africa the employee died of malaria as the result of the sting of a mosquito. Death benefits were awarded to his widow despite the fact, as we indicated, that it could not be determined whether the man was attending to business, relaxing from business cares or sleeping at the time of the accident. Then we had the *U. S. O.* cases where employees had volunteered to entertain men in the armed forces (see *Matter of Scott* v. *U. S. O. Camp Shows,* 298 N. Y. 896; *Matter of Lyons* v. *U. S. O. Camp Shows,* 298 N. Y. 897; *Matter of De Santis* v. *U. S. O. Camp Shows,* 275 App. Div. 880, motion for leave to appeal denied 299 N. Y. 798; *Matter of Block* v. *Camp Shows,* 272 App. Div. 980, motion for leave to appeal denied 297 N. Y. 1032, *supra*). Later there came Federal projects in foreign lands: in Europe, in the Middle East and in the Far East. Employers sent employees, as in the *Lewis* case (*supra*), for instance, as railroad experts advising foreign governments. That particular employer, as our opinion showed, had offices in New York City, Philadelphia, San Francisco, Miami, Argentina and Israel. It has been common practice for some years for employers to advertise in metropolitan newspapers for skilled laborers who will contract to go to parts of Europe, Africa or Asia for a period of years to work on extensive building projects and ventures. All these employers could engage men living in the cities, towns and villages in which or near which those operations were to be initiated and brought to a conclusion but it is more profitable to them to have skilled men from this country work in those distant places. So it was with the employer in the *Lewis* case and workmen's compensation must follow such an employee, as we held it did in the *Lewis* case, in order to carry out the very purpose for which workmen's compensation was originated, viz., to spread over the backs of the many the sudden paralyzing losses of the few. It is a matter of workmen's compensation rates. If the employer wishes to keep his insurance rates down, or his contributions down, if he be a

self-insurer, he need not engage men here at his New York office and send them to distant countries or to places on this continent away from their homes with the understanding that they are to return here.

In the case of the decedent the employer could have sent him on the trip and paid for it in its entirety in which case he would have been covered under the *Lewis* case (*supra*) or he could have hired a separate individual in each of the scientific " hot spots " where the employer wished work done or would benefit from work done " on the scene." The employer here was benefited and expected to benefit in the future by what the board has found expressly was a " combined vacation and business trip to the West Coast ".

The order should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS and FULD, JJ., concur with FROESSEL, J.; CONWAY, J., dissents in opinion in which DESMOND and DYE, JJ., concur.

Order reversed, etc.