In the Matter of the Claim of FRANCES GLICKMAN, Respondent, against GREATER NEW YORK TAXPAYERS et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Argued April 20, 1953; decided June 5, 1953.

*William L. Shumate* and *Edward J. Haniver* for appellants. Decedent's trip to the Catskills to spend the week end with his family was in no way connected with his employment. Consequently, the accident, which occurred some sixty or seventy miles from New York City on his return journey, did not arise out of or in the course of his employment. (*Matter of Marks* v. *Gray,* 251 N. Y. 90; *Matter of O'Keefe* v. *Friederich & Son,* 260 App. Div. 818; *Matter of Bennett* v. *Marine Works,* 273 N. Y. 429; *Matter of Williams* v. *Arthur Gallow, Inc.,* 261 App. Div. 765; *Matter of Gottshall* v. *United Utilities & Specialty Co.,* 275 App. Div. 736.)

*Nathaniel L. Goldstein, Attorney-General* (*Roy Wiedersum, Wendell P. Brown* and *Harry Pastor* of counsel), for Workmen's Compensation Board, respondent. The accident and death of decedent arose out of and in the course of his employment. (*Matter of Bennett* v. *Marine Works,* 273 N. Y. 429; *Matter of Williams* v. *Arthur Gallow, Inc.,* 261 App. Div. 765; *Matter of Gottshall* v. *United Utilities & Specialty Co.,* 275 App. Div. 736; *Matter of Lewis* v. *Knappen Tippetts Abbett Eng. Co.,* 304 N. Y. 461; *Matter of Kristianson* v. *Lehman,* 287 N. Y. 569; *Matter of Madelung* v. *Dale Radio Co.,* 287 N. Y. 556; *Matter of Eaton* v. *Webster Motors of Glens Falls,* 291 N. Y. 699; *Matter of De Cicco* v. *Rubel Corp.,* 275 N. Y. 576; *Matter of Graves* v. *Tide Water Oil Sales Co.,* 275 N. Y. 583; *Matter of Bollard* v. *Engel,* 278 N. Y. 463; *Matter of Wagoner* v. *Brown Mfg. Co.,* 274 N. Y. 593; *Matter of McCarthy* v. *Colonial Life Ins. Co.,* 266 App. Div. 930; *Matter of Worrall* v. *Forest Hills Material Co.,* 267 App. Div. 1021; *Matter of Schwimmer* v. *Kammerman & Kaminsky,* 262 N. Y. 104.)

FULD, J. While workmen's compensation " is not confined by common-law conceptions of scope of employment " (*O'Leary* v. *Brown-Pacific-Maxon,* 340 U. S. 504, 506), more must be shown, to warrant an award, than injury or death and the relationship of employer and employee. It must also appear that such injury or death arose " out of and in the course of " the employment (Workmen's Compensation Law, § 10).

Sidney Glickman worked as an outside claims investigator for appellant employer, a casualty insurance company. His work, of an investigatory nature, was restricted to a very limited area,

to upper Manhattan and a part of the Bronx. Since he covered his territory in his own automobile, he received, in addition to his salary, $10 a week for expenses incurred in its operation. He reported to his employer's office but twice a week, on other days going directly from his home to make his calls. He did, however, have more or less regular working hours — from 9:00 A.M. to 5:30 P.M. — from Mondays through Fridays, whether in or out of the office. Not required to work overtime unless "necessity required it", he sometimes interviewed people in the evening, and even on a Saturday or a Sunday, but never "outside of New York City's limits."

In the summer of 1948, Glickman rented a room for his wife and child in the Catskill Mountain region, at Woodridge, about ninety miles from New York City, and there, with his employer's knowledge, he drove each Friday to spend the week end with them. On Monday, August 16th, shortly after nine o'clock in the morning, as he was returning to New York City, he was killed when his car collided with a truck in Middletown, some twenty-five miles from Woodridge. According to his wife, he had worked during that last week end on papers that he had brought with him from the city.

Glickman was an "outside worker"— to distinguish him from one whose employment confines him to office desk or factory bench — but that did not mean that every accident that might befall him would be within the compass of the Workmen's Compensation Law; it had still to be within the ambit of his work, it had still to arise out of and in the course of his employment. (Cf. *Matter of Bennett* v. *Marine Works,* 273 N. Y. 429, 431; *Matter of Gottshall* v. *United Utilities & Specialty Co.,* 275 App. Div. 736, motion for leave to appeal denied 300 N. Y. 761; *Matter of Williams* v. *Arthur Gallow, Inc.,* 264 App. Div. 800, motion for leave to appeal denied 289 N. Y. 854.)

Here, the employee's week-end trip to the Catskill Mountains was inspired by reasons purely personal, having no connection with his employment. The circumstance that he may have given thought to his work, that he may have read some papers bearing upon it, cannot transform a vacation week end into a business activity. (See, e.g., *Murphy* v. *Board of Educ.,*

314 Mich. 226; *Industrial Comm.* v. *Gintert,* 128 Ohio St. 129; see, also, 1 Larson's Workmen's Compensation Law [1952], § 18.31, p. 253; § 18.32, pp. 256–257.) At any rate, when Glickman left Woodridge on Monday morning — whether or not he intended to stop at his home in the Bronx before starting upon his investigations — it may not be said that his personal trip had ended and his business day had begun. His field of employment, far from extending to the Catskills, was limited to an area in upper New York City, some sixty-five miles from where he was killed. (See, e.g., *Matter of O'Keefe* v. *Friederich & Son,* 260 App. Div. 818.) Certainly, death while at Woodridge on Saturday or on Sunday, or even while on his way there on Friday, would not have been regarded as in the course of employment. The happenstance that the accident occurred on the return trip, long before he had resumed his employment, may not be relied upon to render his death compensable. (Cf. *Matter of Scott* v. *U. S. O. Camp Shows,* 298 N. Y. 896.)

Nor can the fact that the week-end trips were known to the employer or that Glickman was required, if necessary, to work evenings and week ends, assist claimants or render Glickman an employee making a " dual purpose " trip. (Cf. *Matter of Davis* v. *Newsweek Mag.,* 305 N. Y. 20, 24–26; *Matter of Lewis* v. *Knappen Tippetts Abbett Eng. Co.,* 304 N. Y. 461; *Matter of Lepow* v. *Lepow Knitting Mills,* 288 N. Y. 377; *Matter of Marks* v. *Gray,* 251 N. Y. 90, 93; see, also, 1 Larson, *op. cit.,* §§ 18.12, 18.13, 18.14, pp. 241 *et seq.*; § 25, p. 384.) In order to entitle an employee to compensation for an injury sustained while on a " dual purpose " trip, service to the employer must have been one of the motivating reasons, at least a " concurrent " cause, for the journey. In the very recent *Davis* case (*supra,* 305 N. Y. 20), for instance, we dismissed a claim for death benefits where the employee met his death while on a trip " predominantly " for pleasure and only incidentally for business purposes (p. 24). We unequivocally held that, to establish liability — to borrow from *Matter of Marks* v. *Gray* (*supra,* 251 N. Y. 90, 93–94), cited with approval in the *Davis* case — " the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * If the work of the

employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own  *  *  *. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped * * * the travel is then personal, and personal the risk.''

So, here, the trip to Woodridge was personal, '' and personal the risk.'' Of course, when Monday came, it was necessary that Glickman retrace his route and return to his job, but his work had in no way created '' the necessity for travel ''. To highlight the problem, and make more evident the answer, we need only think of week-end trips to distant parts, for example, from New York City to the Adirondacks or to Canada. To uphold an award for an injury sustained by the employee while on, or returning from, such a trip would extend the employer's liability beyond all reasonable or permissible limits, even under a socially conceived statute such as the Workmen's Compensation Law.

The very different fact situation reflected in *Matter of Gottshall* (*supra*, 275 App. Div. 736), upon which the Board relies, effectively distinguishes that case from the present. An employee, a salesman collector, who had spent the week end at his home in Penn Yan, was fatally injured while returning to his employer's place of business in Binghamton. Death benefits were allowed, but, the record significantly revealed, (1) the employer had actually supplied the gasoline for the car for that very week-end trip, (2) the employee had solicited sales and had prepared his accounts, for submission to his employer, at Penn Yan over the week end, (3) had customers along the road, upon whom he frequently called on his way back to Binghamton, and (4) had in his possession, at the time of the accident, merchandise and money belonging to his employer. As is thus apparent, the resemblance between the cases is entirely superficial. While, in *Gottshall,* the accident occurred in the very territory where the employee worked, in the course of a trip entirely bound up in service to his employer, Glickman was killed on his way back from a purely personal pleasure trip, many, many miles from where his day's work was to begin.

The order of the Appellate Division should be reversed, the award of the Workmen's Compensation Board annulled and the claim dismissed, with costs in this court and in the Appellate Division against the Workmen's Compensation Board.

CONWAY, J. (dissenting). We think that the award was properly made and that the case of *Matter of Gottshall* v. *United Utilities & Specialty Co.* (275 App. Div. 736, motion for leave to appeal denied 300 N. Y. 761) is analogous. The Appellate Division gave four reasons for finding that Glickman's death was in the course of his employment as follows: " (a) he was an outside worker, not employed in any one fixed place and had left his residence, even though it was a distant and not fully continuous residence, for the area of employment; (b) the employer had knowledge it was the practice of decedent to spend summer week ends at his place in Woodridge; (c) when the business of the employer required it, decedent worked and could be called on to work Sundays and week ends; (d) the presumptions of the statute add strength to the claim." (280 App. Div. 1006.)

There cannot be any question but that there is ample factual support in the record for reasons (a), (b) and (c). There can be no question but that had Glickman been on his way from his home which appears to have been on Anthony Avenue in the borough of the Bronx and had been killed under the same circumstances, his widow would properly have received a compensation award. The deceased was not on a week-end trip as the term is customarily used. He had taken a residence for the summer for his wife and child at Woodridge, New York, in the Catskills. His wife had rented a room and had a separate kitchen downstairs where she was permitted to do the cooking for herself, the child and her husband. Her husband, the child and she took up their residence there about June 19th for the summer and the wife was living there on August 16th when her husband was killed. August 16th was a Monday. The decedent was on his way to the Bronx to work on his cases. The employer knew that the decedent had taken the family residence for the summer in Woodridge. In fact the employer knew that the decedent left earlier than usual on Friday nights to return on Monday mornings. The widow testified that during the preced-

ing week end he had worked on office papers which he had brought with him and that they had paid a visit to a friend of her husband in a similar line of work where business matters were discussed.

We repeat that had the decedent been on his way from his home in the Bronx to interview witnesses and had been killed in an automobile collision, there would be no question as to an award. Why should it make any difference that he was returning from his summer home to do the same thing when his employer permitted it and allowed him to leave early Friday afternoons in order to visit his summer home? Would it make any difference if he had taken a summer home in Westchester County, for instance, where he would have been able to go home in his automobile every night? Is it a question of mileage? Is an accident compensable because a man takes a summer home or residence thirty miles away but not if he takes one seventy-five miles away? For an outside worker to be covered by a compensation policy must he keep his family in the city all summer? Or must he keep his family during the summer at so short a distance from his work that he can go to see them every night? We must remember that this man worked for an insurance company which knew he was an outside worker, knew that he was entitled to compensation if he was injured on his way to work, knew that he had a summer home for his wife and child and knew that he had to go from there to his work. His employer which permitted the decedent to do these things, which were for the employer's benefit, comes into court in an unenviable position when it urges that it should not pay compensation here when the decedent acted with his employer's consent in everything he did and the employer benefited from the doing of it.

Lewis, Ch. J., Desmond and Froessel, JJ., concur with Fuld, J.; Conway, J., dissents in opinion in which Dye, J., concurs.

Order reversed, etc.