In the Matter of the Claim of MARIE PASQUEL, Respondent, against D. C. COVERLY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 21, 1957.

**347**

*William F. Fischer, Jr.,* and *John J. Duggan* for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Gilbert M. Landy* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Joseph S. Ragno* for claimant-respondent.

GIBSON, J.  The award appealed from is of death benefits under the Workmen's Compensation Law.  Decedent was employed as a bookkeeper and accountant by the agent of an insurance company.  Ordinarily his work was confined to the employer's office at White Plains.  On the day preceding his death he was directed to go to the employer's office at Kingston to explain certain bookkeeping procedures to certain of his employer's agents there.  He took with him statements containing the running account of each agent in the office.  His widow described the papers as voluminous portfolios and the office manager testified that it was very important that decedent return them to the office.  There was some evidence that on one or more occasions in the past decedent had made similar trips to other·offices of his employer.  There was some evidence, also, that he was paid an occasional bonus which would compensate him for such outside duties.

Decedent left the White Plains office in the morning and stopped at his home in Elmsford, which appears to be on or near the route to Kingston, left his home at about 11:30 A.M. accompanied by a friend, Mr. Kuss, and proceeded toward Kingston.  On the road, apparently by chance, he met his wife's relative, Mr. Greenberg, and arranged to meet him that evening for

dinner at his home in Newburgh. Decedent arrived at the Kingston office at about 1 o'clock and worked there until 4:30 or 5 o'clock and, accompanied by Mr. Kuss, went to Mr. Greenberg's home north of Newburgh, which was in the general direction of Elmsford and White Plains, where he had dinner. Thereafter the three men visited two automobile sales establishments in Newburgh, stopped at a tavern where they had drinks and returned to the Greenberg home where decedent played cards for some hours, after which he slept briefly, or at least rested, and then, with Mr. Kuss, went to a diner to eat and proceeded toward Elmsford. At about 5 o'clock in the morning, when about a mile from decedent's home, the car which decedent was driving left the road, causing him to sustain the injuries which resulted in his death.

The employer and his insurance carrier contended before the board, and assert here, that the accident did not arise out of and in the course of decedent's employment. The board held to the contrary and found, also, that "While the decedent may have deviated from his course to visit a relative, at the time of the accident he was returning to his home and was in the direct route home". We do not consider that the language of this bare factual finding indicates that the board premised its decision on a rule of law as to resumption of employment in such case. We have held that no such "hard and fast rule" exists. (*Matter of Van De Carr* v. *Esso Std. Oil Co.*, 282 App. Div. 902.) We do consider that the board was entitled to determine whether or not the deviation was so substantial and unreasonable, in the light of all the facts relevant to the work and to the journey, as to constitute an abandonment of the employment.

Clearly the trip from decedent's home in Elmsford to his employer's Kingston office, some 75 miles distant, was in the course of his employment. There is no intimation that the personal activities in which decedent later engaged were contemplated in advance of his departure or that, if they were, they furnished as much as a partial motivation for the journey. Even that would not necessarily have been enough to exclude the travel from the employment. In an opinion by Judge CARDOZO, the Court of Appeals has stated the test as this: "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own." (*Matter of Marks* v. *Gray*, 251 N. Y. 90, 93–94.) As was also said in that case, "To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled". That inference is inescapable from the record here. The con-

tinued validity of the test formulated in the *Marks* case is clear and the principle has been reiterated. (See *Matter of Glickman* v. *Greater N. Y. Taxpayers,* 305 N. Y. 431; *Matter of Davis* v. *Newsweek Mag.,* 305 N. Y. 20.)

The trip to Kingston being made in the course of the employment, the return journey would normally be its "necessary counterpart" and equally within the employment. (*Matter of Gibbs* v. *Macy & Co.,* 214 App. Div. 335, 336, affd. 242 N. Y. 551.) As (then) Justice KELLOGG wrote in the case cited, "If [his] employment caused the former it equally caused the latter". The return journey there found within the employment seems manifestly less significant than that here involved. There, a store detective, normally an inside employee, was obliged on a Sunday to testify in court, as she was occasionally required to do in connection with her employer's business, and was injured while walking toward her home after the court case had been disposed of. Distinguishing this situation from the case of a minor errand completed by an employee on his homeward way, the court said (pp. 336–337), "The return journey, upon which she was injured, would not have been taken except for an obligation of her employment".

Appellants stress that decedent was a bookkeeper and not ordinarily an outside employee and that the return journey was to have been made to his home at Elmsford rather than to the office at White Plains. In the light of the facts of this case, these distinctions seem in no way controlling. For the time being at least, decedent was an outside employee. He left the office and then his home during the business day to travel some 75 miles to the Kingston office, arrived there at about 1 o'clock and completed his work at about 5 o'clock. As the White Plains office closed at that same hour, he could not have returned to it during the business day. Thus, his home at Elmsford, which happened to be on a direct route from Kingston to White Plains, was logically and reasonably the point of return, as well as a point of departure of the business trip. He was necessarily subject to the same hazards of travel on that day as would have been any employee regularly employed off the premises and working out of his home, and was entitled to the same protection. Appellants rely upon *Matter of Glickman* v. *Greater N. Y. Taxpayers* (305 N. Y. 431, *supra*) where, however, the journey from which the employee was returning was found by the court (p. 435) to have been a "purely personal pleasure trip", made for the purpose of visiting his family at a summer resort. The character of the trip to the resort determined that of the return journey. The same principle is applicable here.

There remains, then, the issue as to the effect of decedent's deviation from the employment, or more properly, perhaps, his delay in commencing the return trip. In *Matter of Van De Carr* v. *Esso Std. Oil Co.* (282 App. Div. 902, *supra*) in affirming a board decision disallowing the claim, we held: " There is no hard and fast rule that if an employee, after deviating from his employment, returns to his normal route that he then re-enters his employment. Each case must depend upon its own facts.'' Here, the board has found, in effect, that the employment, if deviated from, had been resumed and that conclusion is, in our view, supported by substantial evidence. The return journey was a long one. It was necessary to enable decedent to resume his office work and (as an incident entitled to some consideration, though not to compelling weight) to return his employer's records, which the employer was at some pains to recover after the accident. The journey had been very nearly completed and, except for the accident, would have ended in such time as to permit decedent to return to the office without loss of any part of the business day as the result of his personal activities at Newburgh or elsewhere.

A more extended deviation was held insufficient to bar an award in *Matter of Neville* v. *Andersen & Co.* (284 App. Div. 994, motion for leave to appeal denied 308 N. Y. 1049). We consider that decision controlling here. While appellants would distinguish it, contending that there the claimant was, temporarily at least, a traveling auditor and thus an outside employee, whose maintenance and traveling expenses were paid by his employer, the distinctions seem to us unimportant under the facts of this case. We perceive no logical reason for differentiating between an outside employee and the office employee, here involved, required to perform a special mission at a distance requiring round-trip travel of 150 miles. The rule excluding off-premises injuries during the journey to and from work recognizes such exceptions as " employees sent on special missions '', and these independently of such other exceptions '' and employees who are paid for their time while traveling or for their transportation expenses ''. (1 Larson on Workmen's Compensation Law, § 16.) The same author comments: " The ' special errand ' exception is merely one illustration of a typical job in which the trouble and time of the journey is sufficiently substantial to become an integral part of the service itself.''

The time, distance and effort required by the trip, considered with the nature and responsibility of the work which prompted it, tend not only to strengthen the conclusion that the return leg of the journey was as necessary as the first and thus an

integral part of the work but, also, to mitigate the effect of the deviation from it. Upon the entire record, the board's finding was warranted.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

HALPERN, J. (dissenting). I dissent and vote to reverse the award and to dismiss the claim. It seems to me that this case comes squarely within the principle laid down in Larson on Workmen's Compensation (§ 19.29) : " On the other hand, it is quite possible, of course, for an employee in these circumstances to complete his business errand and then embark on such a series of personal activities that the identity of the return business trip would be lost in the process, as it apparently was in Mr. Dooley's case [26 N. J. Misc. 129, 57 Atl. 2d 554], when his normally-covered homeward trip from work lost its covered character by being deferred until the middle of the night."

The return trip, from 3:30 to 5:00 A.M., after a night spent in personal activities, with very little, if any, sleep, was not the kind of trip in which the decedent would have engaged if he had returned at the conclusion of his work or shortly thereafter. The risks of the trip were substantially increased by the intervening activities and lack of sleep (Larson, op. cit. § 19.61). The trip lost its " identity " as part of the decedent's employment.

FOSTER, P. J., and COON, J., concur with GIBSON, J.; HALPERN, J., dissents, in a memorandum.

Decision and award affirmed, with costs to the Workmen's Compensation Board.