Caroline K. Simon, J.
Claimant sues to recover damages in the sum of $102,649.75 for personal injuries suffered on April 30, 1962 when she was riding on the West Side Highway *152 as the only passenger in a 1961 Buick car owned and operated by her husband Frank Fitzgerald.
An order of this court permitted the late filing of the claim and another court order the subsequent amendment of it to state the amount of damages. Claimant has not presented her claim before any other court or tribunal.
The claim was filed against the State, the employer of Frank J. Fitzgerald as a counselor in the 'State Division of Veterans’ Affairs, on the basis that at the time of the accident Frank J. Fitzgerald was acting as a State employee and, in the course of that employment, was en route from the Brooklyn Veterans’ Hospital where his office was situated to attend, at the Cornish Arms Hotel, 23rd Street at Eighth Avenue, Manhattan, a luncheon honoring Gregory Powers, American Legion National Representative. Claimant asserts that express permission to attend the luncheon was granted to Mr. Fitzgerald in writing by his office superior after he had asked for permission on the Wednesday preceding the luncheon and been told to type the request and send it to his chief, Mr. C. Howard Larsen. Claimant introduced into evidence the typed request for approval to take ‘ ‘ an extended lunch hour ’ ’ on which Mr. Larsen had initialled ‘ ‘ approved ’ ’. Claimant also put into evidence, through Mr. Fitzgerald, driver of the car, statements that attendance at such events was a regular part of his work which work required that, to properly service the veterans he counselled, he have close work and personal relationships with those who staffed the various veterans’ organizations, the Workmen’s Compensation Board, the social security offices and similar public and voluntary agencies. Mr. Fitzgerald also testified that he used his car in field work and that, though no State car was given to him, he had official approval for such use of his personal automobile as was demonstrated by having a Veterans’ Hospital parking space assigned to his use, and each year receiving a statement jfrom his office reflecting authorization to use his car in his work which statement was given to him in duplicate, the original being submitted by him annually with his internal revenue return, and the carbons for several years being received in evidence in this trial upon his testimony that they came to him with the originals of which they were exact duplicates. Mr. Fitzgerald testified to having used his car for 17 or 18 years in the field work which was an essential phase of his duties as veterans’ counselor and to having been given, for parking use, a visor card, to identify the car as “ on official business ”. Prior to the accident date he did not submit travel vouchers for reimbursement of such expenses as were incidental *153 to the ear’s use nor had he received any written or oral guidance as to limitations on such use from his superiors in the division.
Other events honoring those with whom he worked had been held at night and after his work hours were ended so there had not been a previous need to obtain permission to attend similar functions. The Deputy Director of the Division of Veterans’ Affairs testified that attendance at this luncheon was not required of Mr. Fitzgerald as part of his official duties.
Mr. Fitzgerald had been invited to the luncheon by the luncheon chairman in a telephone conversation and had sent his own check for $5 to cover the cost thereof and selected his own menu as did the other luncheon guests. The Director and Deputy Director of the Division of Veterans’ Affairs and six or seven other veterans’ counselors were present. The honored guest, Mr. Gregory Powers, retiring as National Rehabilitation Chairman of the American Legion, was stated to be an old friend of Mr. Fitzgerald as well as a person with whom he worked.
On the accident date, Mr. Fitzgerald had worked at the Veterans’ Hospital from 8:45 a.m. to 11:10 a.m., when he left in his car. Veterans’ Hospital faces Belt Parkway at the Narrows and is adjacent to Fort Hamilton. Mr. Fitzgerald described the location as being an “ isolated area ” and his uncontroverted testimony was that the nearest subway station was 45 blocks from the hospital and that bus travel was circuitous and time-consuming so that the permission for an extended lunch hour, his regular lunch hour being 30 minutes, in which to attend the luncheon which permission required him to get there, attend the luncheon and get back to business as soon as possible, demanded that he travel by car which he could do in 40 minutes whereas the trip would require 2 hours travel time each way by subway and bus.
Mr. Fitzgerald in further testimony to substantiate the fact that his car’s use was required in his work and its use was known and expected by his superiors said that his immediate supervisor, Mr. Neches, had ridden with him in his car on division business more than once, and that he submitted a daily record for his field work in which his car was used including records for the very month in which the accident occurred.
Mr. Fitzgerald substantiated claimant’s testimony to the effect that the Belt Parkway entrance closest to the hospital took him past their home. Prior to leaving the hospital he had telephoned to ask claimant to ride with him to Manhattan which she agreed to do. Heavy rain had been falling all morning and the day was dark, gloomy and misty with mist on pavement and cobblestones. After Mr. Fitzgerald, with claimant as passenger *154 left Belt Parkway and came through the tunnel he drove north on the West Side Highway at a speed of about 35 to 40 miles per hour, intending to exit, according to his testimony and claimant’s, at the 23rd Street exit. He was traveling in the middle lane. When he saw that exit blocked by cars leaving the highway there he testified that he decided to continue, leave at the 40th Street exit and go downtown to a parking lot close to his hotel destination. Claimant planned to walk from the parked car to Fifth Avenue and thence to B. Altman’s and thereafter to Stern’s to shop and to return home alone from Stern’s.
Mr. Fitzgerald testified that after passing the 23rd Street exit he started around the “ S ” turn of the highway, travelled a number of feet, accelerating his speed to 45 to 50 miles per hour to pass 2 cars he saw ahead of him, and started to go over to the third lane at the right of the road. At this point he accelerated speed, hit a traffic barrier, and crashed into a southbound car. The occupant of the other car, as well as claimant and her husband were injured and both cars were badly damaged. Claimant was taken in an ambulance to St. Vincent’s Hospital. Her injuries were serious and her hospital stay, two months in length, was followed by return trips to the hospital for cast adjustments. Competent medical proof was introduced to establish that claimant’s injuries are permanent and severe with the result that she no longer can completely do her own housework as she did prior to the injuries and that she suffers recurrent pain.
The foregoing record is sufficient to enable the court to find that Mr. Fitzgerald was negligent in the operation of his vehicle on the accident date and that his negligence was the proximate cause of the personal injuries sustained by his wife, the claimant herein. The court further finds that claimant has adequately established her freedom from contributory negligence.
The more difficult but critical question that remains for determination is whether the negligence of Mr. Fitzgerald, concededly a State employee on the accident date, is imputable to the defendant. Claimant argues that the defendant may be held liable for the negligent conduct of her husband on the ground that he was acting within the scope of his official duties when the accident took place and that the accident arose out of as well as during the course of that official employment.
The court finds that the evidence presented in support of claimant’s theory is insufficient to sustain a finding of liability against the defendant. Mr. Fitzgerald’s own testimony reveals that he was not directed to attend the American Legion *155 luncheon by his superior as part of his official duties. The fact that he recognized that such attendance did not fall within the scope of his normal employment activities is established by his need to obtain written permission in advance to attend that luncheon, and the further fact that attendance at similar functions held prior to the instant luncheon had been scheduled during off-duty hours which did not conflict with his normal work assignments. Moreover, the permission granted was itself limited to the taking of an “ extended lunch hour.” The method of transportation to be employed was not covered, and the fact that Mr. Fitzgerald elected to drive to the luncheon rather than utilize the bus or subway for reasons of personal convenience does not, in the court’s view, create any inference that his immediate superior intended the permission granted to include the use of his personal vehicle.
Essentially Mr. Fitzgerald’s motivation in attending the luncheon was, as he himself testified, to pay his respects to the guest of honor, a friend of many years’ standing, and to acknowledge a personal invitation extended to him by the luncheon chairman who was also well known to him. The fact that his attendance at the luncheon might be said to be of some incidental public relations benefit to his employer does not overcome the primary personal purpose of his attendance, except for which he would not have gone. (See Matter of Davis v. Newsweek Mag., 305 N. Y. 20, 24-25; Matter of Marks v. Gray, 251 N. Y. 90.)
Assuming arguendo, that Mr. Fitzgerald’s journey fell within the scope of his employment, the record is devoid of any proof that the defendant had any actual notice of the presence in the car of the claimant on the accident date. The statutory presumption created by section 59 of the Vehicle and Traffic Law and relied upon by the majority of the Court of Appeals in Burmaster v. State of New York (7 N Y 2d 65) to sustain recovery against the State by the wife of a State employee injured while a passenger in a State vehicle negligently operated by her husband, has no application here, since it is conceded that the car in question was owned by Mr. Fitzgerald. Nor is the court satisfied that such knowledge should be implied from the fact no rules prohibiting the transportation of passengers by employees permitted to use their own vehicles for official purposes were in existence on the accident date. Although the defendant attempted to introduce rules controlling the use of such vehicles, the claimant’s objection to the offer, as being of rules amended and promulgated after this accident and not distributed to Mr. Fitzgerald prior to the accident, was sustained *156 by the court. To hold that the defendant, under the terms of the permission granted, should have reasonably foreseen that Mr. Fitzgerald would not only make use of his own vehicle but would invite his wife to accompany him, where the wife’s presence in the vehicle was wholly unrelated to the intended purpose of his journey, would emasculate the universal rule that the risk to be foreseen defines the duty to be obeyed, and would make the defendant an insurer of the safety of all persons no matter how remote and speculative the causal nexus between the injury suffered by them and the employment of the tort-feasor.
The foregoing analysis compels the dismissal of the within claim.
Motions made by the Attorney-General at the conclusion of claimant’s case to dismiss the instant suit for failure to make out a prima facie case, for failure to preponderate on the issue of defendant’s negligence and for failure to prove freedom from contributory negligence, and on which motions decision was reserved, are now denied. These same motions, renewed at the conclusion of the entire case, with decision again being reserved, are now granted, with the exception of the motion to dismiss for failure to establish freedom from contributory negligence, which motion is denied.