In the Matter of the Claim of ELIZABETH M. LEWIS, Respondent, against KNAPPEN TIPPETTS ABBETT ENGINEERING Co. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Argued October 16, 1952; decided October 24, 1952.

*William L. Shumate* and *Edward J. Haniver* for appellants. I. The New York State Workmen's Compensation Board has no jurisdiction. (*Matter of Cameron* v. *Ellis Constr. Co.*, 252 N. Y. 394; *Matter of Zeltoski* v. *Osborne Drilling Corp.*, 264 N. Y. 496;

*Matter of Copeland* v. *Foundation Co.,* 256 N. Y. 568.) II. The proof shows affirmatively and conclusively that deceased's journey from Tel Aviv to Jerusalem was entirely unrelated to his employment, and was voluntarily undertaken by deceased purely for his own pleasure and gratification. Consequently, it cannot fairly be said that the injuries resulting in his death arose out of and in the course of his employment. (*Matter of Tushinsky* v. *National Broadcasting Co.,* 265 App. Div. 301, 292 N. Y. 595; *Matter of Polski* v. *U. S. O. Camp Shows,* 272 App. Div. 1094.)

*Nathaniel L. Goldstein, Attorney-General (Gilbert M. Landy, Wendell P. Brown* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent. I. The New York State Workmen's Compensation Board has jurisdiction of the claim. (*Matter of Vatouios* v. *Markakis,* 273 App. Div. 832, 298 N. Y. 733; *Matter of Wagoner* v. *Brown Mfg. Co.,* 274 N. Y. 593; *Matter of Roth* v. *Horn Co.,* 287 N. Y. 545; *Matter of Klein* v. *Stoller & Cook Co.,* 220 N. Y. 670; *Matter of Post* v. *Burger & Gohlke,* 216 N. Y. 544; *Matter of Hawco* v. *Neill Constructors,* 275 App. Div. 878; *Matter of Fitzpatrick* v. *Blackall & Baldwin Co.,* 220 N. Y. 671; *Matter of Flinn* v. *Remington Rand,* 277 N. Y. 641; *Matter of Tallman* v. *Colonial Air Transport,* 259 N. Y. 512; *Matter of Baduski* v. *Gumpert Co.,* 277 App. Div. 591, 302 N. Y. 702; *Matter of Smith* v. *Aerovane Utilities Corp.,* 259 N. Y. 126.) II. Decedent's death arose out of and in the course of his employment. (*Matter of Tushinsky* v. *National Broadcasting Co.,* 265 App. Div. 301, 292 N. Y. 595; *Matter of Lyons* v. *U. S. O. Camp Shows,* 298 N. Y. 897; *Matter of Scott* v. *U. S. O. Camp Shows,* 298 N. Y. 896; *Matter of Polski* v. *U. S. O. Camp Shows,* 272 App. Div. 1094; *Block* v. *Camp Shows,* 272 App. Div. 980; *Matter of Lepow* v. *Lepow Knitting Mills,* 288 N. Y. 377; *Matter of Duffy* v. *Levine,* 275 App. Div. 735; *Matter of Bachela* v. *U. S. O. Camp Shows,* 275 App. Div. 880; *Matter of De Santis* v. *U. S. O. Camp Shows,* 275 App. Div. 880; *Matter of Motto* v. *Cosmopolitan Tourist Co.,* 278 App Div. 597; *Matter of Brown* v. *United Services for Air,* 298 N. Y. 901.)

DESMOND, J. Workmen's compensation was awarded here because of the death of John L. Lewis, who, on September 22, 1948, while traveling with or in a United Nations convoy from

Tel Aviv to Jerusalem in Israel, was shot and killed by uniden-
tified Arabs in military uniform, who attacked the convoy. The
material facts are undisputed. Lewis, an engineer, had been
in Israel for about a month working for this employer as a
railroad expert, advising the Israeli Government with respect
to its plan to relocate, nearer the Mediterranean coast, the rail-
road line from Haifa to Tel Aviv in Israel. At the time of the
shooting a truce was in effect between the Israeli and Arab
forces, and, while there had been some sniping, or irregular
warfare, in the general area, there was proof that United
Nations convoys had been running regularly between Tel Aviv
and Jerusalem, for some time. Also, there was testimony, given
by another employee of this same employer, that there had been
no outbreaks of violence, on the road Lewis was traveling
when killed, for about two weeks prior to this occurrence. Lewis
had been hired by this employer in April, 1948, in New York
City, where the employer had its headquarters, its other offices
being located in Philadelphia, San Francisco, Miami, Argen-
tina, Greece and Tel Aviv. All of the employees, including
Lewis, were at all times (except as to those in the San Francisco
branch) paid from, and carried on the payroll of, the New York
office, their activities were controlled and directed from that
office, and they were considered as working out of that office.
When first hired by this employer, Lewis was put to work with
other employees in the making of a survey of the railroads
at Philadelphia, of which city Lewis was a resident. After
Lewis had been working in Philadelphia for about four months,
he, at a conference in his employer's New York City office, was
assigned to work for the employer on the engineering job in
Israel. His instructions, oral and written, were given to him
in New York City, and he was there given a round-trip airplane
ticket from New York to Israel, besides cash for other traveling
expenses. In Israel he worked with, but not for, other employees
of this employer, and the arrangement was that he, Lewis, him-
self, would write his reports to the New York office, and take
back to New York with him reports of the work done in Israel.
At the time Lewis was shot, he had nearly completed his work
in Israel and was getting ready to go back to New York. How-
ever, on September 5, 1948, seventeen days before the shooting,

he had, at Tel Aviv, received a cablegram from the New York office directing him to stop off at Athens on his way home to check on the possibilities of some work for the employer in connection with a hydroelectric project in Greece.

The board, after hearings, made findings of fact and rulings of law in which it held that the death arose out of and in the course of his employment, that at the time Lewis was not violating any orders or instructions of his employer, that he was hired in New York, paid his wages there and received his orders from the New York office, and that the work he was doing in Israel and the trip he was taking at the time of his death were incidental to his New York work, which work was transitory and not conducted at a fixed place outside New York City. On appeal, Appellate Division, Third Department, affirmed, the Presiding Justice dissenting. On the appeal here, the carrier and employer advance two arguments: first, that this was not a New York employment, and second, that the journey during which decedent was shot was not related to his employment but voluntarily undertaken by decedent for his own pleasure, in an area of danger. It was on the second of those grounds, only, that the Presiding Justice dissented.

First, let us consider whether this was a New York employment. The first of many cases in this court on this general subject was *Matter of Post* v. *Burger & Gohlke* (216 N. Y. 544), where it was held that New York State workmen's compensation could be awarded for accidents outside the State, and that, in general, such compensation should be awarded when a New York State employer has sent his employee into another State to work, but under the employer's direction and control. The later cases cover every conceivable set of circumstances, and in the great majority of them we affirmed the awards when there was factual support for a conclusion that the employment was in reality a New York employment. In *Matter of Vatouios* v. *Markakis* (298 N. Y. 733), for instance, there were present, as factors going to show a New York State employment the following: (1) hiring in New York; (2) office of employer in New York; (3) understanding that employee is to return to New York after out-of-State jobs, and (4) payment of out-of-State expenses by the employer. All those elements are present here.

Of course, there is another line of cases, of which *Matter of Cameron* v. *Ellis Constr. Co.* (252 N. Y. 394) is one of the best known, which say that, when the hiring is for work at a fixed location outside New York State, the employment is located outside the State. The latest such decision is *Matter of Cradduck* v. *Hallen Co.* (304 N. Y. 240). There the facts were quite unusual, since the claimant had been working for a Pennsylvania employer when the latter agreed with a New York corporation to act as the employer's field manager in various States, whereupon the claimant worked under the direction of the field manager in New York State and then in Indiana where he was injured. The supervision of claimant Cradduck was by representatives of both corporations. We held that his ·was not a New York State employment, our principal reason being that claimant " had been hired to work upon a construction job in Indiana until his part in that job was finished." (Pp. 243–244.) Between such cases as Cradduck, where the employment was for a fixed out-of-State location, and others, where the work was done at many locations in and out of the State, there are those, like the present one, where the employer hires a man in New York, and from New York directs activities of the employee at various places outside the State, the employer's business being such that it had to be done in the field wherever the employer can get jobs. It is true that, when Lewis was first hired, he was not promised work anywhere except on the Philadelphia project but, later on, he was sent to the Israel job, and was from there ordered to stop off in Greece, during all of which time he received his instructions direct from New York City, was paid from the New York City office and considered as being an employee of that office, and was paid expense money while away from New York City including airplane transportation back to New York City. We think there was enough to justify the finding of the board that this was a New York State employment.

Next we come to the argument that this journey from Tel Aviv to Jerusalem was a voluntary one unrelated to the employment and undertaken by decedent for his own pleasure. But the courts have been most reluctant to come to such a conclusion (if indeed, they have ever so come in any reported case) in situations where the employment is far from home, the employee

has no fixed hours, excursions to nearby places of interest are available and expected, and where the employment itself exposes claimant, generally, to the risk. Here, Lewis was sent by his employer to a country where there had been warfare for a long time and where an uneasy truce was in effect. The employer knew all about that, but for its own profit sent him there, nevertheless. Of course, when Lewis was shot he was on a sightseeing trip, but the same thing was true in *Matter of Lyons* v. *U. S. O. Camp Shows* (298 N. Y. 897), and *Matter of Scott* v. *U. S. O. Camp Shows* (298 N. Y. 896). In those cases the actors went from their performances in Germany, on a vacation in France, and were returning to Germany when hurt. Furthermore, in the present case there is testimony by one of the employer's partners that when the company's employees were in foreign parts, the employer did not object to reasonable sight-seeing. (See, as to recognized recreational activities in connection with employment, *Matter of Piusinski* v. *Transit Valley Country Club*, 283 N. Y. 674; *Matter of Motto* v. *Cosmopolitan Tourist Co.*, 278 App. Div. 597, motion for leave to appeal denied 302 N. Y. 950, and *Matter of Dodge* v. *Wm. J. Keller, Inc.*, 304 N. Y. 792.) It is true that, when shot, Lewis was some twenty miles away from any route he would have had to use in direct connection with his work, but that was so in *Lyons* and *Scott* (*supra*). In the famous " tsetse fly " case, *Matter of Lepow* v. *Lepow Knitting Mills* (288 N. Y. 377), the employee died from an insect bite and there was no proof and no way of knowing whether decedent was at work or engaged in his own private affairs when bitten. Our opinion in the *Lepow* case points out (p. 380) that " decedent's death did not result from encountering a risk commonly to be met by members of the public in the routine of daily life." Another factor present here and considered significant in some of the cases, is that the work of this employee was such that not only was he still on the payroll with time to kill, waiting passage to Greece (see *Matter of Polski* v. *U. S. O. Camp Shows*, 272 App. Div. 1094; *Matter of Tushinsky* v. *National Broadcasting Co.*, 265 App. Div. 301, appeal dismissed 292 N. Y. 595), but he was subject to call at all times, and, on the day of the shooting, would have been expected to respond to any requests from the

government people in Israel, if such requests had been made (see *Matter of De Santis* v. *U. S. O. Camp Shows*, 275 App. Div. 880, motion for leave to appeal denied 299 N. Y. 798).

There is still another, and more general theory of workmen's compensation law that can be used here, as it was in the early case of *Matter of Wickham* v. *Glenside Woolen Mills* (252 N. Y. 11, 12) and expressed thus: " ' An accident befalls a man " in the course of " his employment if it occurs while he is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time to do that thing ' " (quoted from an English case).

The order should be affirmed, with costs.

LOUGHRAN, Ch. J., CONWAY and DYE, JJ., concur with DESMOND, J.; LEWIS, FULD and FROESSEL, JJ., dissent in the following memorandum: When the employee was shot and killed in danger-ridden territory, he was in a convoy, at least twenty miles from the locale of his work, engaged upon a personal pleasure trip of his own that had nothing whatsoever to do with his job. If the language of the Workmen's Compensation Law is to have any reasonable meaning, it may not be said that the injuries to the employee, resulting in his death, arose " out of and in the course of the employment " (Workmen's Compensation Law, § 10). The order of the Appellate Division should be reversed and the claim dismissed.

Order affirmed.