PiERSorr R. Hildreth, S.
This is an accounting proceeding. It was commenced by Manufacturers Hanover Trust Company (herein called Manufacturers) as one of the coexecutors of the will of Ethel ¡9. Jadwin, deceased, to settle its own account for the three-year period from the date decedent died, October 4, 1964, to October 4, 1967. During that period the named individual coexecutor died and the named successor individual coexecutor succeeded him. The account as filed has been adopted by and in behalf of the individual executors except with respect to certain matters put in issue by answers and objections. Accordingly, this proceeding is now one to settle the account of each of the three executors for their respective periods of administration and to determine the objections.
The main issues relate to the compensation to be allowed to the deceased executor and to the commissions to be allowed the successor executor. These issues arise because two days after the individual executor died and before the successor qualified, the corporate coexecutor, Manufacturers, distributed Treasury notes of $210,000 and securities having a value of $7,473,537.01 to the residuary legatee. The account as filed includes the value of that distribution in the computation of commissions to which Manufacturers claims to be entitled, but the account does not *811 include any computation of or request for compensation or commissions to either the estate of the deceased executor or to the successor executor. The residuary legatee contends that the value of that distribution cannot be considered or included in determining either compensation to the deceased executor or commissions to the successor.
Mrs. Jadwin died October 4, 1964. She left an estate valued at over 30 million dollars all of which, after bequests .to others aggregating less than one million dollars, she gave to Princeton University. She appointed her friend, Alvin 0. Brush (who had been a friend of her predeceased husband), and Manufacturers as executors of her will. Both served until Saturday, April 24, 1965 when Mr. Brush died. She also appointed Irving A. Wills (who was likewise a friend of her husband and of Mr. Brush), as an executor in place of Mr. Brush if the latter should die before his duties were fully performed. These appointments were made by paragraph Tenth of her will which provided: “ tenth: I hereby nominate, constitute and appoint my friend alvin g. brush, and manufacturers trust company as executors of this, my Will, and trustees of the trusts herein created. In the event that Alvin G-. Brush shall die, resign, fail to qualify or for any reason cease or fail to act as executor of and/or a trustee under this, my Will, before his duties as such shall have been fully performed and completed, then I nominate, constitute and appoint irving a. wills of Manhasset, New York, as an executor and trustee in his place and stead. No executor and trustee named herein shall be required to give any bond or security as such for any reason or in any jurisdiction. All the powers, duties, privileges and immunities herein conferred or imposed upon the executors and trustees herein specifically named shall devolve upon their survivor, legal successor or successors.”
At all times Manufacturers was fully aware of the provisions of the Jadwin will appointing Mr. Wills as successor executor if Mr. Brush died. On Monday, April 26, 1965, the first business day after Mr. Brush died, the attorneys who had represented Mr. Brush and Manufacturers as coexecutors prepared the papers for issuance of letters testamentary to Mr. Wills. Mr. Wills signed them the following day, April 27,1965, at the office of Manufacturers immediately after attending the funeral of Mr. Brush. The documents were then submitted to the Surrogate’s Court, and letters testamentary were issued to Mr. Wills on May 6,1965 as a successor executor of the Jadwin will.
The account does not separate the administration of the estate as between the periods before and after Mr. Brush died. Before Mr. Brush died he and Manufacturers distributed assets of the *812 estate valued at approximately $22,000,000. On the date Mr. Brush died, assets valued at $10,887,409.03 remained on hand which included the securities which were distributed two days later.
The evidence amply indicates that Mr. Brush directly participated in the administration of the estate from the time Mrs. Jadwin died until his own death. In order to carry out the disposition of the entire residuary estate to Princeton, the formulation of a plan for use of the bequest as directed by the Jadwin will was required. Under paragraph Sixth of the will the residuary estate was given first to the executors who were directed to pay it over to Princeton upon such terms and conditions as they in their sole discretion should determine as a memorial to the late husband and son of Mrs. Jadwin. It is undisputed that Mr. Brush conducted the negotiations for the estate in formulating a plan for the appropriate use of the bequest as Mrs. Jadwin desired. The plan as formulated was ultimately accepted and embodied in an agreement in December, 1964.
The plans for the complete distribution of the residuary estate were worked out before Mr. Brush died. While Mr. Brush lived all assets exceeding 30 million dollars were collected, all general legacies except one were paid, assets were appraised, most debts paid, reserves for taxes and expenses were established, $80,000 was paid on account of New York estate tax ultimately fixed at $78,323.36, attorneys’ fees had been agreed upon, and a distribution of securities valued at $20,875,623.50 had been made to Princeton on January 11,1965. In connection with that ‘distribution, Mr. Brush and Manufacturers as the coexecutors and Princeton as residuary legatee executed an agreement whereby Princeton expressly agreed to save the executors harmless from any claims and also agreed that the executors would retain the balance of the assets for distribution upon completion of the administration of the estate, and upon a final accounting.
Notwithstanding the literal language of that agreement, the court is of the opinion that both Princeton and the executors understood that the estate would be distributed as readily as the executors deemed feasible even though it might be within what was then the prohibited statutory seven-month period under section 218 of the Surrogate’s Court Act. For that and other reasons the executors required Princeton to incorporate an express indemnity provision in the agreement to save them harmless from any liability arising by reason of the distribution.
In March of 1965 a representative of Princeton inquired of Manufacturers as to when a further distribution might be made, *813 and was told that although no precise answer was possible they might like to do it when the Federal estate tax return was filed. Whether Mr. Brush was advised of this does not appear. But on Friday, April 28,1965 Manufacturers unilaterally determined that a further distribution could be made. It wrote a letter to Mr. Brush who was then ill in a hospital asking him to sign and return a copy of the letter if he approved, and they would then proceed with the distribution, or if he had a different view that they would be glad to hear from him. Mr. Brush never received the letter. He died the next day, Saturday, April 24, 1965.
On Monday, April 26,1965 Manufacturers considered whether or not to proceed with the distribution. It consulted counsel and received advice that there was no “ legal ” impediment to its going ahead with the proposed distribution. It then instructed other counsel to prepare appropriate 'receipts for Princeton to sign acknowledging receipt of securities of the value of $7,473,-537.01. The receipt was signed Monday afternoon, April 26, 1965 although physical delivery of the securities took place Tuesday morning, April 27,1965.
Mr. McG-orry, a vice-president of Manufacturers, testified that the idea of making a further distribution to Princeton as outlined in the letter to Mr. Brush on April 23 originated with him. He did not discuss it with Mr. Brush although he considered it customary and necessary to secure approval of cofiduciary Brush before making a distribution. It would appear that the approval of both fiduciaries had been obtained before proceeding with previous distributions.
It is clear from the testimony that in making the distribution Manufacturers was fully aware that legal problems would arise (as has been the case) with regard .to the effect the distribution would have upon the compensation which Mr. Brush might be awarded and the commissions to which Mr. Wills would be entitled. There is no evidence that there was any urgency or that Princeton was even aware of the proposed distribution until Monday afternoon, April 26, 1965, although the receipt recites that Princeton1 ‘ has now requested a further distribution. ’ ’ The receipt also reiterated and incorporated the undertakings of the January 11,1965 agreement including the provision to indemnify Manufacturers.
The contention of the individual executors is that the distribution was made deliberately in an attempt to deprive one or both of them of any compensation or commissions based upon the value of the distribution. Manufacturers suggests that it made .the distribution to “ preserve ” the issue because it had a *814 responsibility to act in such manner as might possibly benefit the residuary legatee as opposed to a benefit to its cofiduciaries. Manufacturers itself claims full commissions inclusive of the value of the distribution. Such commissions are computed at $666,285.90 of which $460,000 has been paid, leaving a balance due of $206,285.90. The account shows that Mr. Wills has received $28,000 on account of commissions, and that the estate of Mr. Brush has received $460,000 on account of commissions. There is no objection by any party to the foregoing payments which have already been made.
Mr. Brush was a director of Manufacturers when he died and Manufacturers is the sole executor of his will. That the issues here place Manufacturers in its capacity as an executor of the Jadwin will and as executor of the Brush will in a position of some conflict is obvious, and the duality of its responsibility and obligations to both estates is recognized. It gives this as a reason for not including in its account any computation of commissions to the individual executor. This, of course, has required the individual executors to engage counsel and interpose answers. Manufacturers appears by different attorneys in its two fiduciary capacities. This does not remove the conflict of responsibility. It is a single legal person and a single fiduciary. It does not become two persons by retaining different attorneys. All parties have been fully aware of the dual capacities in which it was acting and no one has objected thereto.
The contentions of the parties are as follows:
(1) Mr. Wills: (a) objects to a credit to Manufacturers for the distribution of $7,473,537.01 to Princeton on April 26, 1965,
(b) alleges that the distribution was made at the request of Princeton for the purpose of depriving him of commissions,
(c) asks that the commissions to which he is legally entitled be determined, and allowed upon all assets on hand when Mr. Brush died, such commissions being computed at $224,169.06 less $28,000.00 received, leaving a balance claimed of $197,169.06,
(d) asks that Manufacturers be held liable personally for any loss of commissions suffered by reason of the distribution, (e) asks that he be allowed $70,000 for legal services rendered by his attorneys to himself as executor, and (f) that the account as .to his period of administration be settled; and (g) Mr. Wills claims the commissions to which he is legally entitled, but to the extent that the court in its discretion may award the estate of Mr. Brush compensation based in part on the distribution of April 26,1965, consents .that any such amount be deducted from the commissions to which he is legally entitled so that the aggregate of compensation to the estate of Mr. Brush and the com *815 mission to Mr. Wills will not exceed a single full commission at statutory rates computed upon the entire estate. The claim of Mr. Wills against Manufacturers personally is asserted only in the event that it is determined that Mr. Wills is not legally entitled to commissions computed inclusive of the said distribution made to Princeton on April 26, 1965.
(2) Manufacturers as executor of the will of Brush: Asks that the court in the exercise of its discretion determine commissions of Brush as executor to be $627,299.28 which represents commissions computed at statutory rates upon all assets received and paid out through April 27, 1965 and includes distribution made to Princeton after Mr. Brush died on April 26,1965.
(3) Princeton University: (a) objects to a payment of $8,900 for “ accounting ” services, and asks that a personal claim of Mr. Wills of $1,600 be determined, (b) objects to any allowance to the Brush estate for commissions above the sum of $535,921.02 already paid, being commissions on assets actually received and paid out before April 24, 1965 at statutory rate which Princeton concedes Brush is entitled to, stating it is “ sufficient compensation ”, and (c) objects to any commissions to Brush or to Wills with reference to the distribution of $7,473,537.01 to Princeton on April 26, 1965. It contends that the court cannot legally or as a matter of discretion award compensation to a deceased executor in excess of commissions at statutory rate limited to the value of assets actually received and actually paid out while such executor lived, (d) alleges that the commissions to which Mr. Wills is entitled are $71,699.80, being computed only upon assets received and paid out after the date he was issued letters on May 6, 1965, (e) asks that the claim of Mr. Wills that Manufacturers be held personally liable for any loss of commissions be denied, and (f) asks that reasonable compensation for the attorneys for Mr. Wills be fixed for services rendered to him as executor exclusive of services, if any, for his individual benefit.
(4) The Attorney-General as statutory representative of ultimate charitable beneficiaries takes a position essentially similar to that of Princeton.
The court will first consider the commissions to which Mr. Wills is legally entitled. Commissions are statutory and are allowed for “ receiving and paying out ” (CSPA 2307). The dispute here concerns whether Mr. Wills, who was named as successor executor if Mr. Brush should die, became vested with his powers immediately upon the death of Brush or did not become executor until letters were issued on May 6, 1965, which was 13 days after Mr. Brush died.
*816 Courts have held many times that an executor becomes such at the moment of 'death of a testator, and that letters subsequently issued are merely evidence of the power conferred by the will. The powers of an executor named by a testator derive from the will and not from the letters subsequently issued by the court. (Hartnett v. Wandell, 60 N. Y. 346; Matter of Walsh, 147 Misc. 281; Matter of Griffin, 193 Misc. 419 ; Matter of Kennedy, 149 Misc. 188; Matter of Zlinkoff, 152 N. Y. S. 2d 942; Matter of Silkman, 121 App. Div. 202, affd. 190 N. Y. 560.) It seems to the court that such rule is equally applicable to a successor executor named in the will to succeed a prior executor upon the death of the latter.
Mrs. Jadwin named a successor to act if her first named executor should die. She intended to have her estate administered by eofiduciaries, either Mr. Brush or Mr. Wills acting with Manufacturers. Accordingly, the court holds that Mr. Wills became successor executor immediately upon the death of Mr. Brush, and was a coexecutor with Manufacturers from the time Mr. Brush died. He was ready and willing to participate and perform his fiduciary duties as coexecutor from the time Mr. Brush died.
Where there are coexecutors the acts of one in reference to administration of an estate are deemed to be the acts of all. As stated by Surrogate Wingate in Matter of Heubach (165 Misc. 196, 202-203 [1937]) coexecutors “ constitute an entity, and are regarded in law as an individual person.” (Barry v. Lambert, 98 N. Y. 300; Matter of Hammer, 237 App. Div. 497, affd. 261 N. Y. 677.)
Also, “ a coexecutor who is willing to perform his statutory duties is entitled to participate in the administration and cannot be deprived of his right to earn his commissions by the acts of his cofiduciary who was responsible for his inability to render services to the estate” (Matter of Faulkes, 4 A D 2d 954, app. dsmd. 4 N Y 2d 676). The act of Manufacturers in making the distribution of securities to Princeton on April 26,1965 must be regarded as an act performed by both coexecutors as a single entity. The court determines that Mr. Wills is legally entitled to full commissions at statutory rates for receiving and paying all assets on hand when Mr. Brush died, inclusive of the distribution of April 26, 1965.
We next consider compensation for the deceased executor, Brush. With regard to an executor who dies before administration is complete, the rule is that he is not entitled to full statutory commissions as a matter of right, but the court may, in its discretion, make an allowance of compensation to his estate not *817 to exceed statutory commissions were the estate fully administered. (Matter of Battell, 261 App. Div. 120, affd. 286 N. Y. 97; Matter of Bushe, 227 N. Y. 85; Matter of Barker, 230 N. Y. 364; Matter of Vigeant, 29 Misc 2d 569.)
It is generally customary to determine and allow such compensation in an amount equivalent to commissions computed at statutory rates upon specified assets received and paid out or at a specified fraction of such computation. SOPA 2307 (subd. 1, par. [a]) allows a fiduciary “ commissions,” and subdivision 5 refers to such commissions as being the “ compensation ” to which the fiduciary is entitled. SOPA 2207 (subd. 6) provides that upon settlement of the account of a deceased fiduciary the court may allow to the fiduciary of the deceased fiduciary reasonable compensation for any services rendered by him to the estate accounted for, and that ‘ ‘ The compensation so allowed plus any commissions retained by the deceased fiduciary or payable to his estate shall in no event exceed a full commission Such references in the statute indicate that the deceased fiduciary is allowed compensation which is properly stated to be in form of commissions, the extent or amount being in the discretion of the court.
That the discretion of the court in respect to allowance of compensation to a deceased fiduciary is not limited to the commissions computed only upon items actually received and paid out during the life of the deceased fiduciary was held in Matter of Battell (supra). In that case where administration was substantially complete when a trustee died, compensation was requested at three fourths of full statutory commissions upon the whole estate. The initial decree limited compensation to commissions only on amounts received and paid out before the trustee died, upon the ground that the discretion of the Surrogate was so limited as a matter of law. The Appellate Division reversed, holding that there was no such limitation as a matter of law, stated that the amount requested was ‘ ‘ amply warranted ”, and remitted the matter for the Surrogate to redetermine compensation without any such limitation upon the exercise of discretion.
In this case the deceased executor, Mr. Brush, concededly rendered faithful and substantial services. The senior officer of Manufacturers himself testified that the distribution to Princeton of April 26,1965 was essentially a ministerial act. The work of an executorial nature remaining after Mr. Brush died was minor. The accounting was largely a matter handled by the attorneys. The court is of the opinion that, as a matter of discretion, the distribution of over seven million dollars made two days after Mr. Brush died should be given some consideration *818 in determining his compensation, especially since this was'5part of the residuary bequest for which he was instrumental in formulating plans for its use. The court accordingly determines that compensation to the estate of Mr. Brush for his services as executor will be allowed in an amount equal to commissions at statutory rates on all amounts received and actually paid out while he lived, and at one half the statutory rate upon the distributions made between April 23 and April 27, 1965.
In accordance with and upon the consent of Mr. Wills, the commissions to the Brush estate upon the distribution of April 26, 1965 will be deducted from the commissions to which Mr. Wills is legally entitled as herein determined.
Certain other objections are disposed of as follows:
1. The personal claim of Mr. Wills in the amount of $1,600 is allowed, objections thereto having been withdrawn at the hearing.
2. The objection to payment of $8,900 to Mr. Wills for accounting and other services is sustained in part. Mr. Wills is a C. P. A. and was familiar with the financial affairs of decedent. He prepared tax reports, schedules of assets, income and financial statements for the executors but also rendered services of a personal nature to Mr. Brush in connection with decedent’s funeral and bequests of personal property. In view of the nature of the estate and the knowledge of its condition possessed by Mr. Wills, the executors were justified to use his services for accounting purposes and the expense is a proper expense of administration. A substantial portion of the bill, however, appears to be for services rendered to Mr. Brush of a personal nature which are not a proper expense of administration. The proof is unsatisfactory as to the exact basis for the charges or allocation between services which were of a personal nature and those relating to accounting matters. The court upon the proof finds that the services considered to be a proper expense of administration amount to $4,718, being 26 hours billed at $28 per hour, and 114 hours billed at $35 per hour, which stun is allowed. The executors are directed to reimburse the estate the difference of $4,182, or at their option may offset such amount against any compensation and commissions awarded.
3. Objection as to allowance of compensation to attorneys for Mr. Wills and any determination of whether same is payable from the estate or by one or more parties personally will be reserved until settlement of decree.
4. The request that Manufacturers be liable personally for any loss of commissions to Mr. Wills is not considered in view *819 of the determination that Mr. Wills is entitled to commissions as herein set forth.
The account should be brought up to date, with revised schedules showing computation of commissions in accordance with this decision, and a corrected summary statement with statement of proposed distribution, after which decree may be settled on notice.