OVERSEAS AFRICAN CONSTRUCTION
CORPORATION, Employer, and St.
Paul Mercury Insurance Company,
Carrier, Plaintiffs,

v.

Eugene McMULLEN, Dec'd, et al.,
Defendants.

No. 72 Civ. 3119—CLB.

United States District Court,
S. D. New York.

Nov. 21, 1973.

Jacowitz & Silverman, P. C., by Irwin B. Silverman, Brooklyn, N. Y., for plaintiffs.

Israel, Adler, Ronca & Gucciardo, by Angelo C. Gucciardo, New York City, for defendant McMullen.

Paul J. Curran, U. S. Atty., U. S. Dept. of Justice, Admiralty & Shipping Sec., by Gilbert S. Fleischer, New York City, for defendant McLellan.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Defendants McMullen and McLellan move for summary judgment, pursuant to Rule 56, F.R.Civ.P., dismissing the complaint here, and granting judgment on McMullen's counterclaim affirming the award of the Deputy Commissioner of the United States Employee's Compensation Commission, for statutory penalty for failure to pay or stay the award, and counsel fees to be awarded against plaintiffs for instituting these proceedings without reasonable ground.

Plaintiff Overseas African Construction Corporation (hereinafter "Employer") is a Delaware corporation engaged in just those activities which its name implies. Plaintiff St. Paul Mercury Insurance Company ("St. Paul") issued to the Employer's assignor, and endorsed for Employer, a certain insurance policy the effect of which is at issue here.

On July 21, 1972, plaintiffs instituted this action, pursuant to § 21 of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 921) and the Defense Base Act (42 U.S.C. § 1651 et seq.) to enjoin enforcement of a compensation award dated June 22, 1972 made by defendant McLellan in his official capacity ("the award"), setting aside the order, and for other relief.

Subject matter jurisdiction exists under 33 U.S.C. § 921(c) and 28 U.S.C. § 1337.

There are no contested factual issues. Our jurisdiction is limited to a review of the proceedings before the Commissioner.

Claimant Eugene McMullen, since deceased, was hired in New York by Employer as Office Manager and Chief Accountant, pursuant to a written contract dated May 14, 1968.

He was assigned to a project at Chisimaio, Somali Republic, Africa, during the period from May 1968 to December 1968. There, his Employer was engaged in a project supervised on a full-time basis, solely by the U. S. Army Corps of Engineers, and financed entirely by the Agency for International Development ("A.I.D.") of the United States Government, which paid out development loan funds directly to the contractor, for the account of the Government of the Somali Republic, as partial performance was certified to it by the Corps of Engineers.

The loan was designated as "Chisimaio Port and Municipal Facilities Loan No. 649–H–002". The Employer was engaged in Phase II of that project. The initial element of scope of work was construction of a settling tank for water drawn from a nearby river, and installation of a pipe-line from the tank, to the town of Chisimaio, and the port. But the single project also included additions to existing port facilities at Serpenti Island, near Chisimaio. The scope of work there comprised a new cargo shed, an overhead conveyor to handle cargo, and placing of a quantity of rip rap as reinforcement of a breakwater. The work was difficult; the climate inhospitable. Tension arising out of thefts of equipment and inventory under McMullen's charge combined with the long hours and hot humid weather to produce a severe and disabling case of work related neurodermatitis, on his hands, feet and elsewhere. At least, so the Deputy Commissioner found, and there is substantial evidence in the record to justify such finding. He was treated locally, and then hospitalized in Nairobi General Hospital in Kenya on two occasions in August and December 1968.

Ultimately in December, McMullen was repatriated for reasons of health, at a time when his skin rash was so malodorous as to result in his being put off the aircraft at Rome, Italy, while en route to the United States.

His skin condition never fully cleared up; he remained unemployed subsequent to January 1, 1969, until his death on January 30, 1972.

The policy issued by St. Paul provided that:

"Item 3. Coverage A of this policy applies to the workmen's Compensation law and any occupational disease law of each of the following states: VOLUNTARY NEW YORK EXCEPT AS NOTED ON ENDT. # 3."

Endorsement No. 3 provides: "It is understood and agreed that Public Law 208 benefits apply as respects the A.I.D. Projects only."

Endorsement No. 5, subparagraph 2) provides: "Policy includes employees working in Chisimaio, Somalia . . . ."

Initially, the employee filed claim under the New York State Workmen's Compensation Law. While a reasonable construction of the policy should bring the employee also within "Voluntary New York", the New York Commission, after a hearing held June 29, 1970, dismissed the claim for lack of jurisdiction. See § 113, New York Workmen's Compensation Law [requiring waiver by claimant, employer and carrier of "their admiralty or interstate commerce rights and remedies"] and Lewis v. Knappen, Tippetts Abbett Engineering Co., 304 N.Y. 461, 108 N.E.2d 609 (1952).

The federal Commissioner relied on Endorsement No. 3. After an evidentiary hearing, the entire record of which has been reviewed by this Court, defendant Commissioner made findings of fact, all of which are supported by substantial evidence.

He found specifically that:

"Chisimaio, Somalia, Africa, . . . is located in the Foreign Compensation District, established pursuant to the provisions of the Defense Base Act (42 U.S.C. § 1651 et seq.,) which

is an extension of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.;) that said employment was pursuant to a contract to be performed outside the Continental United States, as defined in Section 1(a) of the Defense Base Act (DBA) [42 U.S.C. § 1651(a)] and that the liability of the employer for compensation under said Act was insured by the St. Paul Mercury Insurance Company."

He found that the nature of the employment was such as to come within the Defense Base Act jurisdiction, and was a public works contract involving harbor improvements. He also found:

> "there is lack of substantial evidence to overcome the presumption that this claim comes within the provision of the Defense Base Act; that the DBA does apply to this contract and the employment thereunder . . .;
>
> the policy, # C–3989, [of plaintiff St. Paul] can reasonably be held to apply to the employment of the claimant under the contract described herein and that policy provides the Defense Base Act insurance coverage required of the contractor-employer herein; that the term "A.I.D. Project" in the policy could reasonably be a name for the DBA construction contract described herein, since payments for the work were made through and by A.I.D."

He also found that the disability "arose out of and in the course of the employment", and "constitutes an injury" within the statute.

The Deputy Commissioner made an award in the amount of $11,250.00, plus $1,245.50 for medical expenses. This sum, less a lien for counsel fees before the Commissioner in the amount of $2,500.00, was directed to be paid forthwith to the "Estate" of the deceased employee.

█ Plaintiffs seek to set aside the award, and concede that the "sole issue in this case is whether the Deputy Commissioner's decision . . . is supported by substantial evidence."

We think it is so supported. Although no physicians testified as to causation, or the etiology of the neurodermatitis, medical reports of a treating physician were properly received in evidence, and were entitled to some weight. The carrier came forward with no expert or other testimony on causation, and its defense before the Commissioner on this aspect may be characterized as half-hearted.

The only serious issue is whether the policy covered the workmen's compensation benefits in this case. The employee was entitled to compensation both by the statute relied on in the administrative hearing, if this was a project of the sort comprised by the Defense Base Act, and by his contract of employment.[1]

██ The policy specifically refers to coverage for employees working in Chisimaio, Somalia, and Endorsement No. 3 must be read as intending to refer to Public Law 208 benefits (i.e. Defense Base Act) as being available to A.I.D. projects. A reading of the policy and the employment agreement certainly indicates that the parties (employer and St. Paul) then viewed the Chisimaio project as one which required compensation insurance under the Defense Base Act. While the Employer cannot waive the carrier's rights, its intention, and that of carrier when the policy was issued are of some weight in the matter. The conclusion is inescapable that both

---

1. The contract provided:
"Section 7. EMPLOYEE'S INSURANCE BENEFITS
(a) Employer agrees to procure and pay the premiums for such compensation insurance as will accord to Employee (or to his estate or dependents, in the event of his death) the statutory benefits for death or injury to which the Employee may be entitled under the applicable Federal law of the United States including but not limited to the Defense Base Act and War Hazards Compensation Act. Said workmen's compensation insurance shall also include coverage of Employee for illness due to endemic diseases of Somalia. . . . "

regarded the Chisimaio project as within the Defense Base Act.

This conclusion, shared by the Deputy Commissioner, is supported by substantial evidence. The full time presence of the United States Army Corps of Engineers, supervising the job, and approving all vouchers for interim payment for estimated quantities of rip rap placed in this Somalian Harbor is compelling. The mission of the Corps of Engineers is defense; it is not the Clerk of the Works, or a consulting engineering firm for the private projects of foreign governments, howsoever financed.

Courts must remember the admonition that "We are not to 'shut our minds' as judges to truths that 'all others can see and understand'" [McGovern v. City of New York, 234 N.Y. 377, 392, 138 N.E. 26, 32 (1943)]. Certainly we should not reverse administrative determinations for lack of substantial supporting evidence, when the latter recognize an A.I.D. harbor project for what it is, and for what the parties also recognized it to be when the insurance was placed.

■ We may rely on such factual determinations, even when they relate to jurisdictional facts. See Michigan Mutual Liability Co. v. Arrien, 344 F.2d 640, 645 (2d Cir. 1965), cert. denied, 382 U.S. 835, 86 S.Ct. 80, 15 L.Ed.2d 78, and cases there cited. In that case, the Court noted "the administrative determination that a case falls within the federal jurisdiction is 'entitled to great weight and will be rejected only in cases of apparent error.'" [Quoting Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942).]

A literal reading of the applicable definitions found in 42 U.S.C. § 1651(b)(1) excludes the possibility of such apparent error. These include:

"(1) the term 'public work' means any fixed improvement or any project, whether or not fixed, involving construction, alteration, removal or repair for the public use of the United States or its allies, including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project."

■ Surely the Somalian project was a "harbor improvement" and the water supply "ancillary work in connection therewith". No evidence is cited to the effect that the Somali Republic is our "ally" but we should presume regularity, on the part of the U. S. Corps of Engineers, which probably would not be engaged in supervising a harbor project near the politically sensitive Mid-East area, except for an ally.

We need not reach the issue of estoppel by issuance of the policy, since the Deputy Commissioner did not rely thereon.

As the Employer and carrier had actual notice which was timely, the Deputy Commissioner was justified in his conclusion that the claim should not be barred for late filing.

■ The fact that the Executor, to whom the award was finally made, was not issued letters testamentary by the Surrogate of Kings County, New York, until January 3, 1973, almost a year after the award was made to him as such, is of little moment. The doctrine of relation back applies. McGlothan v. Pennsylvania R. Co., 74 F.Supp. 808 (E.D. Pa.1947), rev'd on other grounds, 170 F.2d 121; Doyle v. N.Y. Ontario & W. Ry., 66 App.Div. 398, 72 N.Y.S. 936 (1901); Rattoon v. Overacker, 8 Johns. 126 (1811). As stated by Surrogate Hildreth, In re Jadwin's Estate, 58 Misc.2d 809, 296 N.Y.S.2d 901, 908:

"Courts have held many times that an executor becomes such at the moment of death of a testator, and that letters subsequently issued are merely evidence of the power conferred by the will. The powers of an executor named by a testator derive from the will and not from the letters subse-

quently issued by the court." (Citations Omitted.)

A New York executor has statutory authority to take such reasonable actions after death and prior to probate as is necessary to preserve the estate. New York EPTL § 11–1.3. The Commissioner was entitled to assume that the probate would be effected, and that the executor would qualify according to law, as he in fact did. Surely delay in the Surrogate's proceedings should not prevent prompt adjudication in the United States Department of Labor. The Deputy Commissioner was justified in proceeding as he did.

Defendant executor is entitled to judgment on his counterclaim, and the complaint is dismissed for want of merit.

Certain peripheral issues remain. Plaintiffs sought no interlocutory injunction as required by § 921(b) of the Longshoremen's and Harbor Workers' Compensation Act. Their complaint prayed for an injunction, but no motion was made, and no hearing sought or held on notice, to demonstrate that irreparable damage would result if no stay were granted.

Payment was not made timely (within 10 days) as required by the Act in the event no stay was sought or received. The issue is presented whether, under the circumstances, legal fees and costs should be assessed against St. Paul.

 Under § 14(f) of the Act, a twenty (20%) percent penalty is imposed for such non-payment. While an executor, as here, ordinarily will not have the immediate need for compensation benefits which affects an injured worker in the usual case, the penalty is by its terms mandatory. While a Court might have stayed payment at least pending probate, and the qualification of the personal representative, no such stay was sought, and after January 3, of this year, no conceivable basis existed for such a stay. Defendant executor is entitled to the 20% penalty.

 Legal fees stand on a different footing. Although we believe the action lacking in merit, we cannot say that plaintiffs' position was frivolous or malicious. Under all the circumstances, each party should bear his own legal fees in this Court.

The Clerk shall enter judgment, pursuant to Rule 58, F.R.Civ.P., in favor of George McMullen as Executor of the Last Will and Testament of Eugene McMullen, deceased, and against St. Paul Mercury Insurance Company, in the amount of $14,994.60, and costs.

The Court fixes the reasonable value of the legal services rendered to the Estate of Eugene McMullen, deceased, in this action at the sum of $1,800.00, which shall be a lien on the judgment recovered, in addition to the lien previously imposed for services prior to entry of the award before the Deputy Commissioner, and the Court directs the defendant Executor to pay the same out of any funds received by him by reason of the Judgment in this action.

So Ordered.