Mary Elizabeth **LIPSTREU** et al., Appellants,

v.

Leon **HAGAN** et al., Appellees.

No. 15936.

Court of Civil Appeals of Texas, San Antonio.

July 19, 1978.

Rehearing Denied Sept. 20, 1978.

David M. Coover, Jr., Corpus Christi, for appellants.

Parker Ellzey, Alice, for appellees.

## OPINION

CADENA, Chief Justice.

Plaintiffs, Mary Elizabeth Lipstreu, Cyrus Harry Grett, Jr., William F. Grett, Jr.,

and Richard L. Grett, filed this suit for recovery of executor's fees which they claimed were due their ancestor, Cyrus Grett, for services rendered by him in connection with the settlement of the estate of Lou Ella Wade, deceased. The trial court rendered summary judgment in favor of defendants, Leon Hagan and Frank B. Lloyd, Jr., present executors of the estate of Lou Ella Wade, denying plaintiffs' claim for recovery of fees allegedly due as the result of the sale of the Wade Ranch, the principal asset of the estate. Plaintiffs' claims for other fees were disposed of by agreed judgment, and this appeal is limited to the propriety of the summary denial of plaintiffs' claim for fees claimed by them to be due as the result of the sale of the ranch.

In her will, Lou Ella Wade, who died in 1972, named Leon Hagan and plaintiffs' deceased ancestor, Cyrus Grett, as independent executors. Until his death on February 6, 1976, Cyrus Grett "did the largest part of the work involved" in the administration of the estate, including assistance in the preparation and trial of litigation involving questions relating to the ownership of property of the estate. Prior to the death of Cyrus Grett, the co-executors had advertised for bids for the Wade Ranch. Sealed bids were received and opened on February 19, 1976, 13 days after the death of Cyrus Grett. After the bids were opened, the highest bidder deposited the sum of $10,000.00 as earnest money.

On February 23, 1976, four days after the sealed bids were opened and the earnest money deposited by the highest bidder, Frank B. Lloyd, Jr., was appointed to succeed Cyrus Grett as co-executor of the estate. On May 14, 1976, a contract for the sale of the ranch to the highest bidder was executed, and on that date the successful bidder deposited an additional $75,000.00 as earnest money. According to the contract, the successful bidder was to pay the sum of $493,290.00 in cash at the time the sale was consummated, with the remainder of the purchase price of $1,701,000.00 to be evidenced by promissory notes executed by the successful bidder. A deed to the ranch was

subsequently executed by the devisees under the will; the high bidder paid the amount called for to be paid in cash under the contract and executed the promissory notes and the deed was delivered to the purchaser.

It is undisputed that no money representing the proceeds of the sale of the Wade Ranch was paid by the successful bidder prior to the death of Cyrus Grett. In his deposition, Leon Hagan, one of the defendants, stated that no substantial services were performed by him, or by Frank B. Lloyd, Jr., who succeeded Cyrus Grett as co-executor, in connection with the completion of the transaction after the death of Cyrus Grett.

In their petition, plaintiffs alleged that Cyrus Grett was entitled to one-half "of the statutory executor's fee of five per cent (5%) of the sale price of the Wade Ranch, which price was $1,700,000.00, * * *, and Plaintiffs therefore would show that the Estate of Lou Ella Wade is indebted to them in the sum of $42,500.00."

Paragraph (a) of § 241, Tex.Prob.Code Ann., provides that executors shall be entitled to receive, "and may retain in their hands, a commission of five per cent (5%) on all sums they may actually receive in cash, * * *." Prior to his death, Cyrus Grett did not "actually receive in cash" any part of the money representing the proceeds from the sale of the Wade Ranch. The statute does not provide for a commission based on the sums actually received in cash by the estate. It limits the commission to a percentage of the sums actually received in cash by the executor.

We think it clear that if the language of that portion of paragraph (a) of § 241, which is quoted in the first sentence of the preceding paragraph, is given its ordinary meaning, it furnishes no support for plaintiffs' claim. Plaintiffs urge that common sense and equity dictate that Cyrus Grett, who had labored 3½ years and had successfully cleared title to the property of the estate by means of a complicated lawsuit so that the property could be sold on terms most beneficial to the estate, should not be denied compensation for his faithful service because of the fact that he died a few days before the bids were opened.

The common law doctrine that a personal representative of a decedent was not entitled to compensation for his services has been abrogated by most, if not all, American jurisdictions by statute. Nevertheless, it is generally held that in the absence of a testamentary provision providing for compensation of the personal representative his right to compensation arises from, and is controlled by, statute. It is also generally held that statutes providing for compensation of the personal representative cannot be construed contrary to their plain and definite language. 34 C.J.S., Executors and Administrators §§ 852–53, pp. 1008–10.

Since the portion of the statute relied on by plaintiffs limits, in plain and definite language, the compensation to be paid to an independent executor to an amount representing a percentage of sums actually received in cash by him, it furnishes no basis for recovery by plaintiffs in this action.

Plaintiffs rely heavily on *Matter of Jadwin*, 58 Misc.2d 809, 296 N.Y.S.2d 901 (Sur. 1969). However, a reading of that opinion reveals that the judgment in that case was based on a statutory provision which expressly provided for a method of compensation of an executor who died prior to the time that he was entitled to payment. 296 N.Y.S.2d at 909.

The judgment of the trial court is affirmed.